(106 So. 891)

### SLAUGHTER v. STATE. (6 Div. 770.)

(Court of Appeals of Alabama. Jan. 12, 1926.)

1. Criminal law ⚖1129(6)—Error may be assigned in a criminal case, and without prejudicing consideration of other questions required by statute.

Though not required, it is permissible to assign errors in a criminal case, and doing so does not preclude court, as required by Code 1923, § 3258, from considering all questions apparent on the record or reserved by bill of exceptions.

2. Homicide ⚖228(1)—Essentials and degree of proof of "corpus delicti" in homicide case stated.

Necessary constituents of corpus delicti in homicide case are death of a human being and

criminal agency, which must be established by direct testimony or by circumstantial evidence of cogent force.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corpus Delicti.]

**3. Homicide ⚖⟞228(1)—Evidence held to establish corpus delicti.**

Evidence *held* sufficient to establish corpus delicti, though it would have been better practice to have subpœnaed surgeon who operated on deceased and attended him until he died.

**4. Criminal law ⚖⟞367—Evidence of deceased's statement after shooting held part of res gestæ.**

Evidence, that immediately after shooting deceased "didn't do nothing but stagger, and says, 'Boys, he got me,'" was part of res gestæ and permissible.

**5. Criminal law ⚖⟞1169(2)—Permitting question and answer as to undisputed matter held not prejudicial.**

In prosecution for murder, permitting question whether state's witness knew when dance was and when he saw deceased, and answer which conformed to other undisputed evidence, *held* not prejudicial.

**6. Criminal law ⚖⟞695(2)—Testimony concerning action of defendant's brother held admissible as part of res gestæ, as against general objection only.**

In prosecution for murder, permitting question to defendant's brother, "What did you go in there to see Pearl about, or what did you go in there for?" to which witness answered, "She called me, * * * Pearl called me," *held* not, as against general objection only, reversible error; matter being part of res gestæ.

**7. Homicide ⚖⟞174(1)—Questions whether defendant pawned pistol handed to him by another with which he did shooting held not error.**

In prosecution for murder, where defendant testified that he shot deceased with pistol handed to him by another, and stated "I pawned my pistol," it was not error for prosecutor to question him as to whether he pawned pistol handed to him, to which defendant answered in affirmative.

**8. Criminal law ⚖⟞1170½(1)—Immaterial inquiry whether defendant brought pistol with which he did shooting back to sheriff's office held not reversible error.**

In prosecution for murder, where defendant admitted the shooting, an immaterial inquiry as to whether he brought pistol with which he did shooting back to sheriff's office, to which he answered in the negative, was not reversible error.

**9. Criminal law ⚖⟞723(1)—Overruling of motion to exclude an unnecessary remark by prosecutor held not error, where it was a deduction from the evidence.**

In prosecution for murder, overruling objection to statement by prosecutor in argument to jury, that if certain parties had not been present defendant could have gone to some other dance hall and killed some other negro, was not error, though statement was unnecessary.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Birdel Slaughter was convicted of murder in the second degree, and he appeals. Affirmed.

Gray & Powell, of Jasper, for appellant.

Counsel argue for error in rulings on the trial, but without citing authorities.

Harwell G. Davis, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

Where the bill of exceptions does not purport to contain all the evidence, any state of evidence will be presumed to uphold the rulings of the trial court; and the rulings on argument of the solicitor, and refusal of the affirmative charge, will not be reviewed. Patrick v. State, 18 Ala. App. 335, 92 So. 87; Bridgeforth v. State, 16 Ala. App. 239, 77 So. 77.

BRICKEN, P. J. [1] Appellant has assigned errors, although the statute or rules of court do not so require, this being a criminal case. The writer approves the practice, and regards it as being advisable, having as it does, the effect of presenting to the appellate court the concrete points of decision relied upon by appellant for reversal. It is permissible to assign errors even in a criminal case, and doing so in no manner prevents or precludes the court from considering all questions apparent on the record or reserved by bill of exceptions as the statute requires. Code 1923, § 3258.

[2, 3] In this case the affirmative charge was requested (refused charges A, B, 5). These charges were requested, apparently, upon the theory of the insufficiency of the evidence to prove the corpus delicti. Or, in other words, that it was not sufficiently shown that Albert Carpenter, the deceased named in the indictment, died as a result of the gunshot wounds admittedly inflicted upon him by this appellant. We cannot accord to the insistences in this connection. This is a case of homicide, the defendant having been charged by indictment and convicted of the offense of murder in the second degree. The necessary constituents of the corpus delicti in a homicide case are: (1) The death of a human being; and (2) the criminal agency producing such death. In other words, the death of the person alleged to have been killed must be established by direct testimony, or by circumstantial evidence of cogent or irresistible force. Here the evidence is without dispute that on a certain night in September, 1922, and in Walker county, Ala., this appellant, defendant in the court below, inflicted several pis-

tol shot wounds into the body of the deceased named in the indictment, and the evidence also shows that some of these wounds were in the bowels or vitals of the deceased. That Albert Carpenter died within 16 days after this shooting at the hospital to which he was taken the next morning after the shooting is not denied, and that he was subsequently buried is also without dispute. We regard the testimony as being amply sufficient to authorize the jury to conclude that the deceased died as a result of the pistol shot wounds inflicted upon him by this appellant, who used an automatic pistol at close range.

[4] The evidence shows that immediately following the shooting Albert Carpenter "didn't do nothing but stagger, and says, 'Boys, he got me.'" This was of the res gestæ and permissible. Without objection the witness, Sam Rasberry, testified among other things: "That fellow Albert Carpenter that got killed," etc., and the testimony of state witness, Joe Carpenter, brother of deceased, disclosed that he carried his brother Albert to the hospital on the morning after the shooting, saw the wounds upon his body, and stated:

"I saw the wounds in his belly; I saw the wound in his hand; I saw the wounds in the stomach twice; I saw the doctor dress the wounds; my brother died then at the hospital; I saw the doctor operate on him, and I saw the wounds on his body; blood was coming out of the holes; they were good size holes; the holes were as large as my little finger; I know that my brother is dead; I helped bury him at Burnwell in Walker county."

While we are of the opinion, as stated, that this evidence, together with other of a cumulative nature, was sufficient to authorize and justify the jury in the conclusion that the deceased met his death as a result of the pistol shot wounds inflicted upon him by this appellant, yet it cannot be questioned that it would have been better practice to have had subpœnaed the surgeon who performed the operation upon the deceased, and who attended him until he died, who could have testified at first hand the immediate cause of the death of deceased. By this means the case would not have been burdened with a question of this kind.

The remaining assignments of error (and the assignments of error cover fully every question contained in the transcript) relate to the rulings of the court upon the admission of the evidence and upon objection made to a certain statement made by the solicitor in his argument to the jury.

[5] The first exception we observe is where the solicitor propounded to state's witness, Joe Carpenter, on direct examination, the following question:

"You know about the time they said the dance at Riceton was, and the next day you saw him, or that night he was said to have been shot?"

The witness answered:

"The dance was Saturday night, and I saw him there on Sunday."

In overruling the objection and motion to exclude there was no error, as nothing appears in the question or answer which could in any manner injuriously affect the substantial rights of the accused. It was shown without dispute or conflict by direct evidence that the dance was on Saturday night, and no material question was presented by the question or answer in this connection, and the rulings of the court did not and could not injure the substantial rights of defendant.

[6] On cross-examination of Wiley Slaughter, defendant's witness and brother, the solicitor asked him: "What did you go in there to see Pearl about, or what did you go in there for?" He answered: "She called me in there." The witness went on to testify: "Pearl called me in the room," etc. All this was of the res gestæ, and, while technically the question propounded was probably objectionable, the objection made was general only; but aside from this we would not predicate reversible error upon the rulings made in this connection, as the rulings could in no manner work injury to defendant who admittedly did the shooting, and undertook to justify for that he shot in self-defense and also in defense of his brother.

[7] The defendant testified that the pistol with which he shot deceased was the pistol of one George Harris, and that said Harris handed the pistol to him just prior to the shooting. He also testified: "I pawned my pistol." The solicitor propounded the following question: "Was that the Harris pistol that you pawned?" Defendant objected and excepted to the overruling of his objection. There was no answer given to the question. The solicitor then asked defendant: "Which pistol was it you pawned, the one you got from Harris?" Objection and exception. He answered: "Yes, sir." That there was no error in the court's rulings in this connection is so clearly apparent the insistence here made need not be discussed.

[8] On the trial of this case defendant strenuously insisted that the deceased, Albert Carpenter, was at the time armed with a pistol; that Albert knocked his brother down and shot him in the shoulder, and then tried to shoot defendant. On redirect examination defendant stated:

"I said Wiley and I were getting ready to go home, and this woman called Wiley in there, and I was waiting for him to go on home. They have got the pistol Albert had among the family somewhere; I don't know whether it was ever brought to the sheriff's office or not."

On redirect examination the solicitor asked him:

"Did you ever bring the pistol back to the sheriff's office that you shot this fellow with?"

Over objection and exception he answered: "No, sir." That this was an immaterial inquiry is manifest, but we are unable to see error in the court's rulings to justify a reversal of the judgment in this connection.

[9] The record shows that during his argument to the jury the solicitor stated:

"If Pearl Bray and the other negro hadn't been there that this man could have come up here and gotten free and went to some other dance hall and killed some other negro."

Defendant duly objected to the statement, and made motion to exclude same, and, upon being overruled, excepted. We regard the statement as having been unnecessary probably, but clearly a deduction from the evidence, and we are of the opinion no error was committed by the court in overruling the motion to exclude the remark.

We are of the opinion that this case in the court below was tried fairly and impartially and without error of a reversible nature. The evidence disclosed a clear-cut conflict, and presented a question for the jury to determine. This the jury did, and from the evidence we are of the opinion they were justified in their verdict.

The judgment appealed from will stand affirmed.

Affirmed.