320 So.2d 80

**Clyde McDONALD**

v.

**STATE.**

**1 Div. 580.**

Court of Criminal Appeals of Alabama.

Aug. 19, 1975.

Rehearing Denied Oct. 1, 1975.

Reynolds T. Alonzo, Jr., Mobile, Clyde McDonald, Pro se, for appellant.

**148**

William J. Baxley, Atty. Gen., and Jane LeCroy Robbins, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Murder; life.

On September 25, 1969, the Grand Jury of Mobile County returned an indictment charging appellant with unlawfully killing Hudson Jones by shooting him with a pistol.

According to the minutes of the court, the case was tried on January 30, 1975, and a guilty verdict was returned the same day.

After notice of appeal, appellant was appointed counsel and granted a free transcript.

On April 16, and May 16, 1975, appellant filed pro se petitions to amend his appeal. We have treated these petitions as pro se briefs and have considered them in addition to the brief filed by appointed counsel.

 In the petitions appellant stated that in 1969, he was sentenced to 15 years on his guilty plea. A petition for error coram nobis was later granted, and in 1975 he was tried and convicted. It is this conviction that is now before us on appeal.

Appellant contends he received a greater sentence after trial than he received on his guilty plea. He insists this was error and "pure vindictiveness."

This question was considered by the U. S. Supreme Court in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L. Ed.2d 714. There the court upheld a higher sentence imposed by a jury that had not been informed of the defendant's prior sentence. Speaking for the court, Justice Powell noted:

"The potential for such abuse of the sentencing process by the jury is, we think, *de minimis* in a properly controlled retrial. The first prerequisite for the imposition of a retaliatory penalty is knowledge of the prior sentence. It has been conceded in this case that the jury was not informed of the prior sentence. We have no reason to suspect that this is not customary in a properly tried jury case. It is more likely that the jury will be aware that there was a prior trial, but it does not follow from this that the jury will know whether that trial was on the same charge, or whether it resulted in a conviction or mistrial."

The transcript of Clyde McDonald's trial does not reflect that the jury was given any indication of the prior sentencing.

Based on the foregoing facts there is no basis for holding the second sentence was vindictively imposed.

The only evidence presented at trial on January 30, 1975, was on behalf of the State.

Booker Williams testified that around 6:00 P.M., on May 17, 1969, he and Hudson Jones were approaching the corner of Garrison Avenue. They were walking north on the left side and Jones was next to the street. A car drove up behind them and someone hollered, "Hudson." Williams thought it was John Boykin's voice. As Williams turned he saw a gun in the driver's window. He could not see who was holding it or who was driving the car. Upon seeing the pistol, Williams started to run and thought he heard three shots. He ran to his home a block away, and looked back up the street where a

crowd had gathered. He then returned to the corner and saw Hudson Jones lying face-down. Jones had a hole in the back of his head and there was a small amount of bleeding from the wound. No other wounds were visible on the body.

Although he could not identify everyone in the car, Williams recognized John Boykin and Leotis Spencer as two of the three occupants. It was Boykin's car and he appeared to be driving, with Leotis Spencer in the rear. He did not recognize the third person.

After the shooting Williams stated he saw Hudson Jones' body in the funeral home.

Leotis Spencer testified that on the day of the shooting he was in the Glass Bar and John Boykin, who was his brother-in-law at the time, invited him to ride. It was around 6:00 P.M. when they drove away from the bar with the witness in the back seat. John Boykin was driving and appellant was seated next to him in the front seat. As the car approached Garrison Avenue, Spencer had dozed off and was awakened when the car brakes were applied. He opened his eyes and saw appellant holding a pistol, leaning across John Boykin.

The witness looked out the window and saw Hudson Jones and Booker Williams. He then heard someone in the front seat call out "Hudson" and saw appellant fire.

Williams and Jones started running and one or two more shots were fired. As the car sped away and turned the corner, appellant turned to Spencer and said, "Don't say anything about that." Spencer asked, "Did you shoot?" and appellant replied, "No. Let's don't do anything about it." Subsequently, Spencer got out of the car and walked home. After telling his mother what had happened, he called the police.

John Boykin's sister, Edna Coleman, testified she saw appellant and her brother around 5:30 P.M. on the evening in ques-

tion. At this time, appellant showed her a blue steel .38 pistol with pearl handles. Later, around 6:00 P.M. she saw the two at the Glass Bar. They were in her brother's car and Leotis Spencer was with them.

Upon conclusion of the State's case the defense rested and made a motion to exclude the evidence. The motion alleged the State failed to make a prima facie case when it did not prove the corpus delicti. Counsel argues the State did not prove a death had occurred and what criminal agency produced it.

The court's action in overruling the motion is the only question presented for review.

The State is required to prove the corpus delicti and this proof consists of two elements: (1) The death of the victim named in the indictment; (2) That death was caused by the criminal agency of another. *Shelton v. State,* 217 Ala. 465, 117 So. 8.

In *McDowell v. State,* 238 Ala. 101, 189 So. 183, the Alabama Supreme Court stated:

> "The corpus delicti is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury."

See also *Gurley v. State,* 36 Ala.App. 606, 61 So.2d 137.

No direct testimony was presented that Hudson Jones was dead. However, there were circumstances in evidence from which this fact could legally be inferred, and these were shown in this testimony by Booker Williams.

> "Q. Now, from the time that you started running, from the time that you ran home, and came back, what

was the total amount of time? In your best judgment? Do you understand my question?

"A. Positive.

"Q. Go ahead and answer.

"A. Well, it wasn't too long. I would say about, it wasn't quite five minutes.

"Q. Five minutes? When you came back, what did you see?

"A. I seen him laying on the sidewalk.

"Q. Who?

"A. Hudson Jones.

"Q. Hudson Jones? What did you see on his body, if anything?

"A. On the body?

"Q. (Affirmative)

"A. He had a hole in his head.

"Q. Where was the hole?

"A. In the back. (indicating)

"Q. Would the record show that the witness is pointing to the right rear portion of the head, indicating where the shot was. Did you look at the body and see any other wounds, if any?

"A. No. He was lying face down. I couldn't see what was back.

"Q. Did you see any other wound on his body?

"A. No."

. . . . . .

"Q. Now, when you came back, and saw this body, that was Hudson Jones's, is that right?

"A. Right.

"Q. You saw this hole in his head?

"A. Right.

"Q. Right here?

"A. Right.

"Q. Did you see blood coming out of it?

"A. Just a little, not too much.

"Q. He was laying there? He was just laying there, is that right?

"A. Yeah.

"Q. Did you see at that time when you came back, did you see this defendant anywhere around the body?

"A. No."

. . . . . .

### RE–DIRECT EXAMINATION

"BY MR. PIERSON:

"Q. Booker, after the shooting, when you saw Hudson there, did you see Hudson after that?

"A. Yeah.

"Q. Where did you see his body?

"MR. ALONZO: Judge, I think that is repetitious, something the defense went into on cross-examination.

"THE COURT: Overruled.

"Q. Go ahead, answer.

"A. Yes, I seen it.

"Q. Where did you see?

"A. On the sidewalk.

"Q. I am not talking about that point.

"A. Oh, the funeral home.

"Q. Are you positive that it was Hudson Jones in this funeral home?

"A. Positive.

"Q. You saw his body?

"A. Right."

In our judgment this evidence was sufficient to infer that Hudson Jones was dead,

and with the other evidence, presented a prima facie case warranting its submission to the jury.

The trial court's ruling was proper.

No error appears in the record.

Affirmed.

All the Judges concur except CATES, P. J., not sitting.