Manslaughter, first degree; sentence: three years.
The appellant was indicted and tried for the murder of his wife, Lillie B. James. The sole question which need be decided on this appeal is whether the State proved the cause of the deceased's death.
The evidence presented by the State on cause of death was sparse. Annie Mae Harris, the daughter of the deceased, testified that during the afternoon of October 6, 1974, the appellant and the deceased left together in an automobile. They had been arguing earlier, but appellant was acting normal when they left. Her mother went to the kitchen, got a knife and took it with her, however. When they returned, the appellant and his son brought the deceased into her house. The witness stated that her mother's face was swollen and her mouth was bleeding. She said the appellant had blood on his clothes at that time. She said the appellant stated in her presence that the deceased had fallen out of the car, that he did not know what was wrong with her, that someone must have "doped her up."
The witness said the appellant took her mother to the hospital from the house and that the next time she saw her mother was, "at the wake. It was on a Friday." After further questions, she said she saw her mother in Hodges Funeral Home in a casket, that her mother's eyes were closed and, "she was different." She further said that she saw her mother buried in Sweetwater.
There is no evidence in the record relating to the death of the deceased other than the above statements given by her daughter. No one testified as to the date of death, and the daughter did not testify as to the date when she saw her mother in the casket or when she was buried.
At the end of the State's case in chief, the defense moved to exclude the State's evidence. From the record, the following occurred, in pertinent part:
 "MR. FINCH: Judge, we would move to exclude the evidence on two grounds. One ground, they haven't proved that Lillie B. James was killed, number one. Number two, that she was killed by George James. Number three, they *Page 1049 
haven't proved a prima facie case in that they haven't proved that unlawfully and they haven't proved it was done premeditatively and with malice aforethought, and they have not proved that George James committed any act which was sufficient to cause death of this Lillie B. James, and further, the second motion is that this Lillie B. James is the Lillie B. James in the indictment.
 "THE COURT: All right. The only thing that gives me any concern at all is that I don't believe you have proven the cause of death. I don't believe you have proven that she died as a result of that beating. I believe that's the only thing you need to address yourself to.
 "MR. HALE: Okay. Judge, as to the blows itself, with a fist and hand that that can be proven by circumstantial evidence. It can be proven obviously by someone who did not see her at the time this was going on.
 "THE COURT: I apparently did not make myself clear. You haven't proven that those blows caused the death.
 "MR. HALE: Well, Judge, I don't believe that the State has to negate everything. I think that we have to show that she was struck in the face and, for example, Judge, it can be a person who has an eggshell skull and —.
 "THE COURT: All right. You'd better find a case to back you up because I'm about to take this away from the Jury. Because you haven't proven that the blows that she received from the Defendant caused her death.
 "MR. HALE: Well, Judge, Sergeant Taylor told you that this woman died due to, it could have been her face, by blows to the head.
 "THE COURT: I don't think you have proven that he hit her, or that he beat her up. And you have proven that she was buried, and we presume that she is dead. But you haven't proven that those blows caused the death. Now that's what I want you to show me some authority on.
 "MR. HALE: Well, Judge, I think you can infer from his statement that he knocked her unconscious. The fact that she was slobbering and blood was coming off of her —.
 "THE COURT: Why is it that every other District Attorney brings a medical expert down here to testify to the cause of death?
 "MR. HALE: Judge, we have not done that in this case and in this case right here, McDonald versus State, it was not done, Judge.
 "THE COURT: If this is the case you are relying on, I am going to read it and I am going to rule on it. . ..
* * * * * *
 "THE COURT: I am probably wrong, but I am denying the motions."
After the State had rested and the appellant's motion to exclude had been denied, the defense then called the appellant to testify in his own behalf.
In considering the question as to whether the trial court correctly overruled the motion to exclude, we may only consider the evidence which was before the trial court at the time the motion was made. Livingston v. State, 44 Ala. App. 559,216 So.2d 731 (1968); Tooson v. State, 56 Ala. App. 613,324 So.2d 327 (1975), cert. denied 295 Ala. 426, 324 So.2d 333. We are required to consider such evidence in its most favorable light for the prosecution. Womack v. State, 34 Ala. App. 487,41 So.2d 429 (1949).
The District Attorney argued, above, that, "Sergeant Taylor told you that this woman died due to, it could have been her face, by blows to the head." The record discloses that Sergeant Taylor was not allowed by the trial court to give an opinion as to the cause of death. He was asked, from his experience in observing people who had been beaten, if he had an opinion as to what caused the damage to the victim's face. The defendant's first objection was sustained. Sergeant Taylor was next asked if he had seen people who had been beaten about the face with hands and fists, *Page 1050 
and he replied in the affirmative. He was then asked, based upon his experience and in the light of such observations, if he had an opinion as to what could have caused the damage to the victim's face. Over objection by the defense, he testified, "It could have been fists, it looked like heavy blows of some type."
Sergeant Taylor testified that he was a detective sergeant with the Mobile Police Department. On cross-examination he stated that he was not a medical doctor. He stated that he did not know what caused the injury and that he could not tell the jury what caused it. On redirect examination, he was asked, "Sergeant Taylor, after you had an opportunity to examine the condition of Mrs. James' head, did you form any opinion based upon her, upon your past experience with the Police Department, as to what could have caused the damage to her face?" The defendant's objection was sustained and properly so.
Needless to say, a police officer is not qualified to testify as to the cause of death, absent some special qualification. See Cobb v. State, 50 Ala. App. 707, 282 So.2d 327 (1973) in which this Court, through Tyson, J., set out at length which lay witnesses have been held by Alabama decisions to be qualified to testify as to cause of death.
At the time the motion to exclude was made, the only testimony which in any way connected the appellant with the injury to the deceased was brought out through Police Sergeant Ralph Jordan reading a statement made by the appellant. In such statement, appellant stated that he and his wife had an argument in their automobile, that when he stopped, she jumped out of the car and they started "tussling," that she pushed him down into some bushes and he thought she had stabbed him. He further stated that, ". . . I stood up and hit Lillie B. four licks with my fist. I hit her on the side of the face and in the mouth and then I started slapping her in the mouth."
In that statement, appellant related his conversation with a doctor at the hospital where he had taken his wife for treatment. Appellant said that he had signed some papers for the doctor to operate on his wife's head. The doctor asked if she had ever been hit in the head before, and the appellant stated, "I told him, yes sir, that a lady hit her in the back of the head with a .38, I told him that this was last year that she got hit with a .38. He told me he was going to have to operate and remove the blood clot from her brain, that this was the only way that he could save her life."
Counsel for appellant argues that the only evidence connecting the appellant with the facial wounds to the deceased is the statement read into evidence by Officer Jordan. He contends that since the corpus delicti had not been proved at that time, it was improper to admit the purported confession, citing Reynolds v. State, 30 Ala. App. 256, 4 So.2d 201 (1941), and Arnold v. State, 30 Ala. App. 115, 2 So.2d 316 (1941), cert. denied 241 Ala. 245, 2 So.2d 319.
To prove the corpus delicti, it is not necessary that the State prove the death of the victim was occasioned by the criminal agency of the appellant. It is a well-settled legal principle that it is only necessary that the State show that the death was occasioned by the criminal agency of another in order to establish the corpus delicti. If the State had proved the death of the deceased, and that it was caused by the criminal agency of another, than the inculpatory statement of the appellant would be admissible.
Here, the testimony shows the appellant leaving with the deceased in an automobile and later returning her in a somewhat battered condition. His explanation was that she had fallen out of the car. Whether this is sufficient ground for the trial judge to determine that her death was by the criminal agency of someone is not necessary for us to determine at this time.
The State charged the appellant with second degree murder, alleging a specific quo modo, i.e. that he, "killed Lillie B. James, by beating her with his fists and hands." To sustain a conviction, the State must prove that Lillie B. James is dead and *Page 1051 
that the cause of her death was by the appellant beating her with his fists and hands.
The State's evidence shows: (1) On October 6, 1974, the deceased left her home in a car with the appellant and on returning some time later that date, deceased was observed to have suffered some serious injury to her face; (2) The appellant took the deceased to a hospital where she was apparently treated for her condition; (3) The daughter of the deceased saw her in a casket and saw her buried at some later unknown date; (4) The appellant made an inculpatory statement that he had hit the deceased four times in the face and slapped her in the mouth on October 6, 1974.
The State's evidence fails to show any of the following: (1) When the deceased died; (2) What the cause of her death was; (3) Whether her facial injuries, apparently inflicted by the appellant, had anything whatsoever to do with her death.
There is a total absence of any testimony from either a physician or any other person qualified to express an opinion as to the cause of death. From aught that appears in the record, the deceased, between the time of the alleged beating and the time when her daughter saw her buried, could have been struck by lightning. The State contends that the corpus delicti may be inferred from its circumstantial evidence, thus enabling the inculpatory statement of the appellant to be admitted. Arguendo, assuming such to be the case, we are still left with only the fact that the deceased was beaten on October 6, 1974, and apparently died and was buried some time prior to the date on which her daughter testified, December 15, 1975.
Certainly, where a body has not been found, the courts have allowed the corpus delicti to be proved by circumstantial evidence. Likewise, where the cause of death cannot be medically determined due to the state of decomposition and putrefaction of the body, the courts have allowed cases to go to juries on circumstantial evidence. In most of those cases, the indictments have alleged that the cause of death or means of death was unknown to the grand jury. In those type situations, a specific quo modo is generally not alleged in the indictment.
The State's brief cites three cases for the proposition that the cause of death may be inferred. Desilvey v. State, 245 Ala. 163, 16 So.2d 183 (1944); Cook v. State, 43 Ala. App. 304,189 So.2d 595 (1966); Dawson v. State, 48 Ala. App. 594,266 So.2d 806, cert. denied 289 Ala. 741, 266 So.2d 812 (1972). Cook is clearly inapplicable as there the cause of death was proved by testimony of a coroner. The dispute was over what caused the injury that caused the death.
Desilvey and Dawson, supra, are also inapplicable on their facts. In both cases, it was impossible to prove the cause of death directly as the bodies were too badly decomposed. The decompositions resulted because the bodies were hidden by the respective defendants.
The first step in a homicide case is to prove that the deceased died because she was killed. The causal connection between the deceased's injuries and her death must be proved beyond a reasonable doubt and not by mere conjecture and speculation. Welch v. State, 45 Ala. App. 657, 235 So.2d 906
(1970). The proper method of proving cause of death is for the coroner or an attending physician to testify as to his opinion on the matter. Such an opinion should be based on an observation of the injury at the time of death. Lowery v.State, 55 Ala. App. 514, 317 So.2d 365, cert. denied 294 Ala. 763, 317 So.2d 372 (1975).
The evidence regarding cause of death in Daniel v. State,31 Ala. App. 376, 17 So.2d 542 (1944) was much more persuasive than that in the present case. There, an undertaker testified that it was her opinion that the death was caused by knife wounds observed on the deceased's body. This Court held that an undertaker was not qualified as an expert on the question of the cause of death. Therefore, in the instant case, even if Officer Taylor had offered an opinion as to cause of death, such an opinion would have been inadmissible. *Page 1052 
Although the State's brief did not bring it to our attention, the transcript reveals that the prosecution used, as persuasive authority on the trial judge, the case of McDonald v. State,56 Ala. App. 147, 320 So.2d 80 (1975).
It is necessary that we clearly distinguish the facts and decision in McDonald from the instant case. In McDonald, there was testimony from a companion of the deceased, that as they were walking down the street, a car drove up behind them. He heard someone yell his companion's name and as he turned, he saw a gun in the driver's window of the car, but could not see who was holding it or driving. He began to run and heard gun shots, the number of which he thought was three. He looked back up the street and saw a crowd had gathered and upon returning to the scene, he saw his companion lying face down. His companion had a hole in the back of his head, and there was a small amount of blood coming from the wound. He identified two persons he recognized in the car. After the shooting, he stated that he saw his companion's body in the funeral home.
One of the occupants identified in the car also testified. He saw the appellant holding a pistol, leaning across the driver. He heard someone call out the deceased's name, and he personally saw the appellant fire the pistol. He saw the deceased and his companion start running, at which time appellant fired two more shots.
Thus, in McDonald, we had two witnesses testifying as to the firing of a deadly weapon at the deceased and immediately thereafter, the deceased lying face down with a hole in his head. In comparison to the instant case, we believe a much stronger inference as to the cause of death can be drawn inMcDonald from the use of the deadly weapon and the immediate observation of the deceased. The cause of death was much more obvious from the testimony there than in the instant case.
Admittedly, McDonald, supra, allowed the issue of cause of death to go to the jury on inferences which could be drawn from circumstantial evidence. By the McDonald case, we did not and do not intend that it be used by prosecutors as a convenient shortcut in establishing the necessary elements in homicide cases. We wish to make it clear at this time that McDonald is the far outer limit to which this Court may be expected to go in this regard. The decision in McDonald is the holding in that case only, based upon the facts and circumstances of that case only and should not be construed by prosecutors or trial judges as a statement by this Court that the State no longer has to
produce medical testimony to prove the cause of death in a homicide case.
There is not one iota of evidence in this case that the injuries inflicted by the appellant caused the deceased's death. There is no showing of why an attending physician or the coroner was not called to testify. Such a showing is incumbent on the State before it is allowed to prove the cause of death by inference. See: Lowery, supra.
Conjecture and supposition are not sufficient to prove cause of death. The appellant's motion to exclude the State's evidence should have been granted. Appellant is, therefore, due a new trial.
REVERSED AND REMANDED.
TYSON and HARRIS, JJ., concur.
DeCARLO, J., concurs in the result.
CATES, P.J., not sitting.