346 So.2d 1170 (1977)
Delores DISMUKES
v.
STATE.
5 Div. 355.
Court of Criminal Appeals of Alabama.
March 8, 1977.
On Rehearing April 19, 1977.
Rehearing Denied May 24, 1977.
*1171 Elno A. Smith, Jr. and Frank L. Thiemonge, III, Montgomery, for appellant.
William J. Baxley, Atty. Gen. and Jack A. Blumenfeld, Asst. Atty. Gen., for the State, appellee.
TYSON, Presiding Judge.
Appellant was charged with the first degree murder of her husband, "Patrick Dismukes, by shooting him with a pistol." At trial the appellant was found guilty of first degree manslaughter, and her punishment was fixed at three years imprisonment. The trial court entered judgment in accordance with this verdict. The appellant's motion for new trial was overruled.
The event giving rise to this indictment took place on July 5, 1975, between 8:00 and 9:00 a. m. at the Kream Korner Cafe in Millbrook, Elmore County, Alabama. The appellant had gone to the Kream Korner that morning to make a phone call from a booth located on southeast corner of the cafe's parking lot. The appellant called a David Whetstone and arranged for him to move a house trailer that morning from its location at the Harbor Light Club, a night club owned by the deceased. Unknown to appellant was the fact that the deceased was inside the Kream Korner drinking coffee at the time she was placing her call to Mr. Whetstone. The deceased came out of the Kream Korner, got in his car, and drove across the parking lot to the phone booth. Shortly thereafter a heated argument broke out between appellant and deceased over her attempts to move the trailer, and, according to appellant's testimony, the deceased told her:
"Dolores, any son of a bitch that touches that trailer to move it I am going to blow his brains out, and that includes yours."
When appellant told him that she was determined to move the trailer and that Mr. Whetstone was on the way to do so, the deceased allegedly stated that, "Well you son of a bitch, I'll kill you right now," then turned toward his open car door. The appellant then pulled a .22 caliber pistol from her purse and shot the deceased five times. In the back seat of deceased's car a loaded shotgun was found. The appellant pleaded self-defense to the charge.

I
Appellant contends that the State's evidence as to the cause of death was insufficient *1172 to support her conviction. In short, the State failed to establish that Pat Dismukes died because he was killed by shots fired by the appellant. Welch v. State, 45 Ala.App. 657, 235 So.2d 906 (1970), and authorities therein cited.
In James v. State, Ala.App., 339 So.2d 1047 (1976), cert. denied Ex parte State ex rel. Attorney General, Ala., 339 So.2d 1052, this Court, through Judge Bookout, observed:
"The first step in a homicide case is to prove that the deceased died because she was killed. The causal connection between the deceased's injuries and her death must be proved beyond a reasonable doubt and not by mere conjecture and speculation. Welch v. State, 45 Ala.App. 657, 235 So.2d 906 (1970). The proper method of proving cause of death is for the coroner or an attending physician to testify as to his opinion on the matter. Such an opinion should be based on an observation of the injury at the time of death. Lowery v. State, 55 Ala.App. 514, 317 So.2d 365, cert. denied 294 Ala. 763, 317 So.2d 372 (1975)."
In its effort to prove the causal connection between the wounds inflicted upon the deceased by appellant and the subsequent death of the deceased, the State offered the testimony of the Elmore County Coroner, Dr. Joseph Benson. Dr. Benson stated that in his opinion the death of the deceased resulted from a "[g]unshot wound of the head and/or chest." (R. p. 8) However, Dr. Benson never personally examined the body of the deceased but derived his opinion after viewing photographs depicting the location of the wounds on the deceased's body and talking with a Dr. Mracek whom he believed examined the deceased's body. (R. p. 8)
Because the cause of death is a very critical element in a murder case, the prosecution cannot resort to "shortcut" methods in the proof thereof. Lowery v. State, 55 Ala.App. 514, 317 So.2d 365, cert. denied 294 Ala. 763, 317 So.2d 372.
The record discloses that a Dr. Mracek examined the body of the deceased at the Elmore County Hospital and there pronounced him dead. (R. p. 20) It cannot be questioned that Dr. Mracek would be the best source of proof as to the cause of death of the deceased. There was absolutely no showing by the State as to why he was not called to testify and to give an opinion on the cause of death based on his direct personal knowledge. Although the State may rely, and often must rely, on circumstantial or secondary evidence in its proof of the cause of death, it may not do so when, as here, there was an expert available who observed the victim at the time of death. James v. State, supra; Lowery v. State, supra. The method here resorted to by the State effectively denied the appellant the right of cross-examination of Dr. Mracek. Lowery v. State, supra.
George Potts, the emergency medical technician who responded to the ambulance call, may have been qualified as an expert to given an opinion on the cause of death. See Cobb v. State, 50 Ala.App. 707, 282 So.2d 327, and authorities therein cited. Potts testified that upon his arrival at the Kream Korner he examined the deceased and found no breathing, blood pressure, or carotid pulse. However, assuming Potts could possibly qualify as an expert who observed the injury at the time of death, he was not asked to give an opinion on the cause of death, nor was any other effort made to qualify him with the necessary expertise to so testify.
When there is available to the State a physician or other qualified expert who examined the deceased at the time of his death, that expert should be called to testify as to the cause of death or his absence explained. "Such a showing is incumbent on the State before it is allowed to prove the cause of death by inference [or other indirect evidence]." James v. State, supra.
For the error shown the judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
BOOKOUT, J., concurs.
*1173 HARRIS, J., concurs in result.
BOWEN and DeCARLO, JJ., dissent with opinion.
BOWEN, Judge, dissenting.
I must humbly and respectfully dissent from the opinion of my learned brothers.
In addition to the facts stated by Presiding Judge John C. Tyson, III, in the majority opinion, there are additional facts in the record which are significant to this dissent.
Neil Rucker, an investigator for the Department of Public Safety, testified that he saw the body of the deceased at the emergency room of the hospital the morning of the shooting and that he was present when the body was examined by Dr. Mracek. He took photographs of the wounds on the deceased which were five in number: one to the side of the head above the ear, one to the center of the chest, one to the front shoulder, one to the back of the shoulder, and one to the side of the deceased. Rucker also testified that he viewed the body of the deceased at the funeral home that same day and that the deceased was, in fact, dead.
A "volunteer emergency technician", George Potts, testified that he examined the deceased at the scene of the crime to determine whether he was living or dead. While this witness did not given an opinion as to the cause of death and no effort was made to qualify him with the necessary expertise to testify to any causal connection, he did testify that he attempted to aid the deceased but found no breathing, no blood pressure, and no carotid pulse. Furthermore, Mr. Potts testified that he saw the appellant at the scene and when he asked her what happened, she replied either, "I think he's killed", or "I think I killed him".
The owner of the Kream Korner, Cecil Mims, stated that he heard some "popping sounds", looked out the window and saw the appellant with a pistol in her hand.
It is undisputed that the appellant shot the deceased and that the deceased did in fact die that same day.
The majority opinion relies on three opinions in reaching its conclusion: Welch v. State, 45 Ala.App. 657, 235 So.2d 906 (1970); Lowery v. State, 55 Ala.App. 514, 317 So.2d 365, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975); and James v. State, Ala.App., 339 So.2d 1047, cert. denied, Ex parte State ex rel. Attorney General, Ala., 339 So.2d 1052 (1976). Each of these cases is distinguishable upon the facts alone and all three cases are distinguished from the case at bar by one central circumstance: Welch, Lowery, and James each involved a "death" as distinguished from a "killing". In each of the three cases cited by the majority, a period of time intervened between the infliction of the fatal wound and death. In Welch, it was 67 days; in Lowery, 31 days; and in James, the evidence failed to show when the deceased died. This distinction is clearly set forth in Welch:
"In a death as distinguished from a `killing', the prosecution must prove an absence of natural causes. That is, the first step is to prove the victim died because he was killed." Welch, 45 Ala.App., at 658, 235 So.2d at 907, emphasis added.
In the three cases cited above the same general factual issue was presented: What was the sole cause of death; was it the defendant who was the guilty agent who produced or contributed to the death of the deceased or was the sole cause of death some bodily or physical malfunction or disease, in no way superinduced or contributed to by the conduct of the defendant? See Duncan v. State, 30 Ala.App. 356, 6 So.2d 450 (1942). In those cases, a "chain of causation" is involved. Welch, supra, at 663. Not so here.
This dissent is governed by the principle that the question of whether under all the circumstances death was the result of the wound inflicted by a defendant is one of fact to be determined by the jury. If there is any proof, direct or circumstantial, to establish the corpus delicti, the sufficiency of the proof is for the jury and not for the court. Gurley v. State, 36 Ala.App. 606, 61 So.2d 137 (1952); Cook v. State, 43 Ala.App. 304, 189 So.2d 595 (1966); Lawman v. State, *1174 18 Ala.App. 569, 93 So. 69 (1922); McCall v. State, 262 Ala. 414, 79 So.2d 51 (1955); Harvey v. State, 15 Ala.App. 311, 73 So. 200 (1916); McDonald v. State, 56 Ala.App. 147, 320 So.2d 80 (1975). In not one of these cases did an expert testify on death or on causation thereof. The sufficiency of the proof of the corpus delicti was held to be a question for the jury.
The majority, in direct reliance on James, supra, states the rule as follows:
"When there is available to the State a physician or other qualified expert who examined the deceased at the time of his death, that expert should be called to testify as to the cause of death or his absence explained. `Such a showing is incumbent on the State before it is allowed to prove the cause of death by inference (or other indirect evidence)'. James v. State, supra." Emphasis added.
This rule, in the opinion of the writer states that the State does not absolutely have to call an expert to testify to cause of death; yet before the State can prove the cause of death by inference, it must show why an expert was not called if one examined the deceased at the time of his death.
The James holding as extended by Dismukes, flies squarely in the face of Slaughter v. State, 21 Ala.App. 211, 106 So. 891 (1926). In Slaughter, the deceased died within sixteen days after being shot in the abdomen with an automatic pistol. There was eyewitness testimony as to the fact of the shooting and nonexpert testimony as to the number and location of the bullet holes in the deceased's body. In Slaughter, the court conceded that it would have been the better practice to have subpoenaed a surgeon who had performed an operation upon the deceased and attended him until his death. The appellate court nevertheless affirmed a conviction of second-degree murder, stating that the testimony was amply sufficient to authorize the jury to conclude that the deceased had died as a result of the pistol wounds. See also Hall v. State, 34 Ala.App. 246, 38 So.2d 612 (1949) ("Under these undisputed facts no experts were necessary to prove the cause of his death; and certainly the jury was not required or called upon to guess, conjecture, or resort to suspicion on the question as to the cause of deceased's death." 34 Ala.App. 248, 38 So.2d 614).
In not one single case cited by this writer other than Welch, Lowery, and James, has expert testimony been required to determine the cause of death or has any explanation been required. In other Alabama cases, such testimony has been required. Jones v. State, 155 Ala. 1, 46 So. 579 (1908). This apparent inconsistency is a real one and has resulted from a loose construction of the application of the legal principles involved to each specific factual situation.
In this case the cause of death was obvious. McDonald, supra; James, supra, at 1052. The causal relationship between the act of the accused inflicting the wound and the death of the deceased was not obscure or beyond the knowledge of the average layman. A dangerous weapon was used and there was no evidence presented or even suggested that the accused died from anything but the bullet wounds inflicted by the appellant. The appellant entered a plea of self defense; she told the volunteer emergency technician that she had killed the deceased. On the witness stand, the appellant admitted shooting the deceased. This case should not be reversed on evidence such as this nor should this court substitute its findings for those of the jury which convicted the appellant.
Expert medical testimony as to the cause of death should be admissible in all homicide cases. It should be regarded as necessary and essential for a conviction in many homicide cases and in those where death is not the natural and probable consequence of the unlawful act of the accused or the result of an independent intervening cause in which the accused does not participate and which he could not foresee.
The judgment of the trial court should be affirmed.
DeCARLO, J., concurring in this dissent.

*1175 ON REHEARING
BOOKOUT, Judge.
On rehearing, I am convinced that the reversal should be set aside and the conviction should be affirmed. A more careful consideration of the record and the cases bearing on proof of cause of death prompts me to this conclusion.
In the instant case, the examining physician was not called as a witness, although he and the coroner, who was called, resided in the same town where the trial was held. No reason was shown for failure to call the attending physician. The State attempted to prove cause of death by the coroner, who: (1) did not identify the body as that of the deceased, as named in the indictment, and (2) based his opinion on previously viewing photographs of a body he had not examined and which was not identified as the deceased, and also based upon a purely hearsay conversation he had previously had with the attending physician.
Both the coroner's testimony and the photographs of an unidentified body, authenticated by witness Neal Rucker, proved absolutely nothing when admitted into evidence. A witness cannot testify that wounds shown in a photograph were in fact the cause of death, without ever having examined the body. The wounds could have been inflicted after death by any number of other means. An expert witness may state that in his opinion the type wound depicted in the photograph would ordinarily cause death, but he cannot say that the wound shown in the photograph did in fact cause death without having seen the body.
In fact, when the coroner testified, the photographs had not been introduced into evidence, and he did not view them in the courtroom. All we can say for the coroner's testimony was that at some prior time he had used some photographs of a man that he was told was shot in the Millbrook area of Elmore County; and that he had based his opinion on the cause of death of that unknown man upon the photographs and upon what another doctor told him, "who did, I believe, see the body." Such testimony, as pitifully insufficient as it was, resulted in no error, however, because the appellant never objected to one word of it.
The problem with the instant case, at first glance, is that the State attempted to prove cause of death by use of expert testimony, but used the wrong expert. The problem was complicated by introducing photographs of a dead body that the photographer never identified. Again, no objection was interposed by the appellant. In the absence of a proper objection and ruling thereon, adverse to the appellant, we have nothing to review. Frazier v. State, 53 Ala.App. 492, 301 So.2d 256 (1974). I am compelled to the conclusion that the cause of death may be proved in certain instances without expert testimony.
There are cases where the killing is almost immediate or simultaneous with the commission of the crime, such as the shooting of a person five times. Where witnesses observe this, find no pulse and no blood pressure, and state that the person appears to be dead, the cause of death is fairly obvious and, therefore, may be proved by circumstantial evidence without expert testimony. However, (1) where the act which the State claims to have caused death is remote in time from the actual death, or (2) where there is a possibility or likelihood that an intervening cause could have brought about death, or (3) where the nature of the injury is not one that is ordinarily likely to cause death, or (4) where there is not an obvious casual connection between the nature of the injury and the death, then the State is under a burden to present expert testimony to show that the injury in fact resulted in and caused the death in question.
In McDonald, supra, the shooting and death were almost simultaneous, in the presence of witnesses, and the cause of death was so obvious that it would have been absurd to have claimed that an intervening cause resulted in death. Going a little further, in James, supra, the wounds inflicted upon the deceased were possibly the result of a beating or possibly the result of falling from a moving vehicle. There *1176 was no testimony as to when death occurred after the wounds were inflicted. There, it was incumbent upon the State to produce evidence to show that death was in fact the result of the wounds inflicted by the appellant, as there were no witnesses to the act. Going a bit further yet, in Lowery, supra, the appellant was treated for gunshot wounds in Montgomery at a hospital, operated on four times, then sent to Birmingham for further treatment, where death occurred ten days later. The Birmingham physician who could definitely testify as to cause of death did not testify, but rather a Montgomery physician who had not seen the deceased for ten days prior to his death was called to testify as to cause of death. There, the gunshot wounds were such that were likely to have caused death, i. e., use of a deadly weapon, but because of the remoteness of time between the actual injury sustained and the death, any number of things could have intervened to cause death. Thus, where the time between the act inflicting the injury is remote from the death, the rule is different than when the act inflicting the injury immediately causes death. This is especially so where the act causing immediate death is committed in the presence of witnesses.
Considering the instant case, it seems to fall more closely to the facts in McDonald than to those in either James or Lowery, supra, in that there was an immediate infliction of five gunshot wounds upon the deceased by the appellant in the presence of witnesses. A key witness stated that he was unable to find a pulse or blood pressure, and the appellant told him that she thought she had killed the deceased. Here, there was more causal connection between the act (use of a deadly weapon) and its consequences (death) than there was in either James or Lowery.
This case should not be construed by the State to mean that it is no longer necessary to prove cause of death by expert testimony in any case. We still adhere to our decisions in Lowery and James and to our admonition in James that the rationale applied in McDonald, supra, would not be extended beyond the facts set out therein. This case falls within those facts. The application for rehearing should be granted, our prior reversal in this cause should be set aside, and the conviction should be affirmed.
Application granted; judgment of reversal set aside; dissenting opinion issued on March 8, 1977, becomes the majority opinion; majority opinion becomes a dissenting opinion; cause affirmed.
HARRIS and DeCARLO, JJ., concur in dissenting opinion of BOWEN, J., issued March 8, 1977.
BOOKOUT, J., concurs specially.
TYSON, P. J., dissents.
TYSON, Presiding Judge, dissenting.
I adhere to the views expressed by me in behalf of a then majority of this Court expressed on original deliverance on March 8, 1977, in this cause.
Because of the change of position of two of my brethren and the dissent of two others, I feel compelled to make the following observations:
Former Presiding Judge Bricken, in James v. State, 28 Ala.App. 225, 181 So. 709, stated in construing Article 1, Section 6, of the Constitution of Alabama 1901:
"The constitution of this State, section 6, provides that no person shall be deprived of life, liberty or property, except by due process of law; and, as has been often stated, `[I]t is the manifest purpose of this provision to accord to the citizen security against the arbitrary action of those in authority, and to place him under the protection of the "law of the land," which is synonymous with the expression, "due process of law."'
"In order that it may be affirmatively ascertained that due process of law prevails in every criminal case, the statute makes it incumbent upon the appellate courts, without assignment of error, to `consider all questions apparent on the record,' and to see that in all things the proceedings as shown by the record are regular. Code 1923, Section 3258."
*1177 On record page 141, the appellant's counsel, at the close of the presentation of the State's case, made a motion to exclude the evidence, wherein he noted:
". . . The State has failed to prove the four elements necessary to prove a case of murder in the first degree."
Clearly, such objection and motion raised the failure of the State to properly produce evidence as to the cause of death in this cause. The medical technician, George Potts, simply examined the deceased at the scene and found no breathing or pulse. Potts, however, expressed no opinion, nor was he called upon to do so in his testimony.
Two State's witnesses testified that they heard "popping sounds," but no single State's witness positively stated that they saw the appellant fire the weapon at the deceased. There was, however, an inculpatory statement in the form of a spontaneous explanation by the appellant at the scene to the effect that she had shot him. Construed most favorable to the State, all that can be said is that the appellant presumably fired five times with a .22 caliber pistol in the direction of the deceased. Thus, in my judgment, it becomes all the more critical that the State establish that the death resulted from the wounds inflicted by the appellant. In attempting to prove this, in my judgment, we have a complete breakdown of due process of law as is required by Article 1, Section 6, Constitution of Alabama 1901; and Amendment 14, Constitution of the United States.
As noted on original deliverance, the State used shortcut methods by presenting the testimony of a physician, Dr. Benson, who had "talked to the physician who examined the deceased's body at the Elmore County Hospital, one Dr. Mracek." Not only was Dr. Mracek not called to testify, but no reason is shown for the State's failure to present his testimony. Thus, the State effectively denied the appellant the right of cross-examination of Dr. Mracek, in violation of Article 1, Section 6, Constitution of Alabama 1901, and the 6th and 14th Amendments to the Constitution of the United States.
I am therefore firmly of the opinion that the error is here preserved and is of such a basic nature as to require reversal of this cause. Title 15, Section 389, Code of Alabama 1940.