[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 937 
Appellant was convicted of murder and sentenced to life imprisonment for the stabbing of George Kimbril, his stepson-in-law. Betty Lou Kimbril, appellant's stepdaughter, testified that on February 5, 1980, she and her husband, George, were living with appellant. According to Mrs. Kimbril, that afternoon, she was sitting on the couch and her husband was reclining on the couch with his head in her lap, when appellant entered the house and, without provocation, stabbed George Kimbril.
Appellant testified that he had been drinking, that he and Kimbril had an argument, and that Kimbril cut appellant on the hand with a knife. Appellant then left and went to borrow a butcher knife from a neighbor. When appellant returned to the house, Kimbril stood up and reached in his pocket and appellant stabbed him. Appellant then went next door and told another neighbor, "Call the sheriff, I think I have killed George. I hope to God I haven't."
The deputy coroner viewed the stab wound in Kimbril's chest between 7:00 and 7:30 P.M. and pronounced Kimbril dead at the scene. He did not examine the body for other wounds or give his opinion as to the cause of death.
Appellant was arrested about 6:30 or 7:00 P.M. at his neighbor's home and taken to police headquarters. Attalla Police Officer Harold Enich testified that appellant was "obviously intoxicated" at 7:30 P.M. and he did not question appellant at that time. He did, however, advise appellant of his rights and appellant volunteered an oral statement, which Enich did not reduce to writing.
Captain Koy Rigsby also talked to appellant that evening, observed that he was "drunk," and advised him of his rights. Appellant signed a waiver of rights form and gave Capt. Rigsby a statement which was reduced to writing. The following day, after appellant had spent the night in jail, Capt. Rigsby again advised appellant of his rights. Appellant signed another statement, which was later put in written form. Rigsby asked appellant whether he remembered anything from the day before and appellant replied, "Yes, sir, I remember everything. I was not drunk, I remember."
At trial, appellant objected to testimony regarding the contents of any of the three statements. The trial court ruled that both the oral statement and the first written statement given February 5 were inadmissible because appellant was intoxicated. The second written statement, taken on February 6, was admitted into evidence.
 I
Appellant claims that the State did not adequately prove the cause of the victim's death; therefore, he contends, the trial court erred in denying his motion to exclude at the close of the State's case. *Page 938 
Appellant is correct that there was no expert testimony regarding the cause of death. Expert testimony, however, is not always necessary to establish the cause of death. Dismukes v.State, Ala.Cr.App., 346 So.2d 1170, reversed on rehearing,346 So.2d 1175, cert. den. 346 So.2d 1177 (1977). The question whether, under all the circumstances, death was the result of the defendant's assault on the deceased, is one of fact for the jury. Dismukes, supra; Gurley v. State, 36 Ala. App. 606,61 So.2d 137 (1952); Hall v. State, 34 Ala. App. 246, 38 So.2d 612
(1949). If there is any proof, direct or circumstantial, to establish the corpus delicti, the issue is one of fact for the jury and not one of law for the court. McCall v. State,262 Ala. 414, 79 So.2d 51 (1955); McDonald v. State, 56 Ala. App. 147, 320 So.2d 80 (1975); Cook v. State, 43 Ala. App. 304,189 So.2d 595 (1966).
Our review of the record convinces us that there was sufficient circumstantial evidence regarding the cause of George Kimbril's death. Under these facts, expert testimony was not needed. It was not "beyond the knowledge of the average layman" to understand that stabbing a person with a butcher knife could cause death. The victim's wife witnessed the stabbing. The appellant admitted to his neighbor that he thought he had "killed George," and he later pleaded self-defense. There was no indication that Kimbril died from anything other than the stab wound inflicted by appellant.
It is our judgment, therefore, that the facts of the instant case fall squarely within the holding of Dismukes v. State, supra at 1174, in which the court stated:
 "In this case the cause of death was obvious. The causal relationship between the act of the accused inflicting the wound and the death of the deceased was not obscure or beyond the knowledge of the average layman. A dangerous weapon was used and there was no evidence presented or even suggested that the accused [sic] died from anything but the bullet wounds inflicted by the appellant. The appellant entered a plea of self defense; she told the volunteer emergency technician that she had killed the deceased. On the witness stand, the appellant admitted shooting the deceased. This case should not be reversed on evidence such as this nor should this court substitute its findings for those of the jury which convicted the appellant." [Citations omitted.]
 II
Appellant next contends that the admission of his second written statement, given to the police the day after the stabbing, was error. Counsel asserts that appellant "must have been influenced" to make the last statement because of the existence of the first two. Thus, he argues, his final confession was "tainted" by his two earlier confessions.
Initially we note that the record does not demonstrate that appellant's first two confessions should have been excluded on the basis of his intoxication. Intoxication short of "mania" (or such an impairment of the mind or will as to make the person confessing unconscious of the meaning of his words), will not render a confession inadmissible. Jackson v. State, Ala.Cr.App., 375 So.2d 558 (1979); Rogers v. State, Ala.Cr.App., 365 So.2d 322, cert. den. 365 So.2d 334 (Ala. 1978); Medders v. State, Ala.Cr.App., 342 So.2d 49 (1977).
From the record:
 "Q. [By defense counsel] What do you mean by intoxication, sir?
 "A. [By Officer Enich] To me he is obviously under the influence of alcohol, he was — speech was slurred, his dress and manner was sloppy.
"Q. Did he have any trouble knowing where he was?
"A. I couldn't say for sure his state of mind, sir.
 "Q. Did he have any trouble knowing who you were as far as being an officer of the law?
"A. No, sir, he recognized us as police officers. *Page 939 
 "Q. He recognized you as police officers. Did he recognize where he was as far as the jailhouse?
"A. Best that I could tell he did, yeah.
 "Q. Did he have any trouble understanding your words, what you were saying, as far as understanding them?
 "A. No, sir, I believe we made ourselves clear with him.
 "Q. Was he drunk that he couldn't stand up by himself?
"A. He was able to stand by himself.
"Q. Was he able to walk by himself?
"A. Yes, sir.
"Q. At any time did he pass out?
"A. No, sir, not while I was there.
. . . .
 "Q. Officer Enich, if you had run up on Mr. Hollis in the condition that you saw him in down there at the jail on a public street, would you have arrested him?
"A. Yes, sir, under his condition I would have.
"Q. For public intoxication?
"A. Yes.
. . . .
 "Q. [By defense counsel] At the time that you advised Mr. Hollis of his rights and he signed the waiver form there, and at the time you took his statement, in your opinion, was Mr. Hollis drunk?
"A. [By Capt. Rigsby] He was drinking.
 "Q. Do you recall testifying at the preliminary hearing in this case, Mr. Rigsby?
"A. Uh huh.
 "Q. Do you recall telling us at that time that he was drunk, not as drunk as you had seen him before, but he was drunk?
"A. That's right."
Although we recognize that the learned trial judge ruled, out of an abundance of caution, that the confessions were inadmissible, we (having the benefit of hindsight) believe that the evidence fell short of establishing the "mania" necessary to render the statements involuntary. The fact that appellant was so intoxicated that he would have been arrested for public drunkenness is not sufficient. Woods v. State, 54 Ala. App. 591,310 So.2d 891 (1975).
Even if appellant's first two confessions were properly excluded, however, it would not follow that his last confession was also inadmissible because it was the product of the first two. United States v. Bayer, 331 U.S. 532, 540, 67 S.Ct. 1394,1398, 91 L.Ed. 1654 (1947). In this context, we believe the following observation by the United States Supreme Court inBayer, supra, is apt:
 "Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."
The rationale for excluding any confession made after an involuntary one is that the later confession flows from the same improper influence or inducement as the earlier one.United States v. Bayer, supra; McAdory v. State, 62 Ala. 154
(1878); Levison v. State, 54 Ala. 520 (1875); Cook v. State,16 Ala. App. 390, 78 So. 306 (1918). By the same token, once it is shown that the improper influence or inducement has been dispelled, there is no reason not to admit the subsequent confession. Cook v. State, supra. In Levison v. State, supra, the court observed:
 "The first confession is regarded as the parent of the succeeding confessions, and that being improperly obtained, vitiates the second, unless it appears the influence extracting the first has been removed, and all connection between the two dissevered." [Emphasis added.]
In the case before us, after Capt. Rigsby testified that appellant had spent the night in the Attalla jail and had given a third statement the next morning, appellant's counsel questioned Rigsby as follows: *Page 940 
 "Q. Captain Rigsby, who wrote the second statement, the one taken the next morning?
 "A. My partner, Dale Walton, he does all of our writing, he is the best.
 "Q. Did he write the second statement from the first statement?
"A. No, sir, he taken it absolutely from Mr. Hollis.
"Q. Started all over again from scratch?
"A. That is right.
 "Q. As if he didn't know anything that was in the first statement?
"A. That is right.
 "Q. You don't think that the contents of the first statement in any way influenced the way that Officer Walton wrote up the second statement?
 "A. No, sir. We asked Mr. Hollis did he remember anything and he said, `Yes, sir, I remember everything, I was not drunk, I remember.' And the, he went to telling us exactly what happened.
We think it clear, from the foregoing testimony and from the fact that appellant spent the night in jail and had time to sober up, that the State proved "the influence extracting the first [confession had] been removed, and all connection between the two dissevered." Levison v. State, supra. We therefore find no error in the admission of appellant's statement.
 III
Appellant also argues that reversible error occurred when Capt. Rigsby was allowed to testify that a statement (ruled inadmissible) given while appellant was intoxicated was similar to the later statement (ruled admissible) given the following day.
From the record:
 "A. [By Captain Rigsby] This is the statement of Hoyt Hollis given the second day.
. . . .
 "Q. [By assistant district attorney] Is the statement basically the same statement he gave to you earlier?
 "MR. HUDSON: [Defense counsel] Judge, I'm going to —
"A. Basically, yes.
 "MR. HUDSON: — I object to that, they speak for themselves.
"THE COURT: Overruled."
Appellant argues that Capt. Rigsby's testimony indicated to the jury the contents of the earlier statement and bolstered the weight of the later statement.
However, when, as here, an objection comes after the witness' answer and there is no motion to exclude, there is no error.Day v. State, Ala.Cr.App., 378 So.2d 1156, rev'd on other grounds, Ala., 378 So.2d 1159 (1979). In addition, as we have indicated in Part II of this opinion, there would have been no error in admitting appellant's two statements made while he was intoxicated. Finally, we note that when there is one confession by a defendant properly admitted into evidence and there is strong corroborative evidence of the guilt of the defendant, the admission of another confession even though it should have been excluded, is harmless error. Cork v. State, 50 Ala. App. 670, 282 So.2d 107 (1973).
 IV
Appellant complains of reversible error during closing argument by the State when the following occurred:
 "MR. MOORE: [Assistant district attorney] Why did he have to go next door to borrow a knife? Why didn't he go in the kitchen and borrow a knife? Because his wife was hiding the knives from him. It's not the first time he used a knife to settle his differences.
 "MR. HUDSON: Your Honor, I'm going to object to that. There is no testimony to that.
 "THE COURT: The jury will remember the testimony." (Emphasis added)
Appellant maintains that the prosecutor's comment was an impermissible statement of fact not borne out by the evidence. It is a well-settled proposition that, although counsel may not argue as a fact that which is not supported by the evidence, they should have wide latitude to draw reasonable inferences from the evidence during *Page 941 
their closing arguments to the jury. Brown v. State, Ala.Cr.App., 374 So.2d 391, aff'd, Ala., 374 So.2d 395 (1979). In the case before us, there was testimony that appellant's wife had, in fact, hidden knives from him, and that knives were found under the drain board. In view of such testimony, we think the prosecutor's remark was a permissible inference to be drawn from the evidence, and we find no error.
 V
Appellant insists that the trial court erred by not charging the jury on criminally negligent homicide as a lesser offense included in the indictment for murder. The appellant did not request a written charge on criminally negligent homicide; instead he excepted to the court's omission of that offense from its oral charge.
An exception reaches only what the court did say, Grisham v.State, 147 Ala. 1, 41 So. 997 (1906), and if the objection is to the court's refusal or omission to charge on a particular subject applicable under the evidence, the procedure is by way of a requested written charge. Wells v. State, Ala.Cr.App.,378 So.2d 747, cert. den., 378 So.2d 756 (Ala. 1979); Tranholm v.State, 38 Ala. App. 57, 77 So.2d 491, cert. den., 262 Ala. 703,77 So.2d 494 (1954).
We therefore hold that appellant did not properly preserve the question for review. Yates v. State, Ala.Cr.App.,390 So.2d 32 (1980); Harville v. State, Ala.Cr.App., 386 So.2d 776
(1980); Hall v. State, Ala.Cr.App., 375 So.2d 536 (1979).
We have searched the record for error prejudicial to appellant and have found none. The judgment of conviction by the Etowah Circuit Court is therefore affirmed.
AFFIRMED.
All the Judges concur.