(123 So. 99)

## ARRINGTON v. STATE. (4 Div. 545.)

Court of Appeals of Alabama. June 18, 1929.

Charlie C. McCall, Atty. Gen., and J. W. Brassell, Asst. Atty. Gen., for the State.

RICE, J. Appellant was the town marshal of the town of Abbeville, in Henry county. He killed one Will Bethune a merchant of said town, by shooting him with a pistol.

Upon the trial, under an indictment charging murder in the first degree, appellant was convicted of the offense of manslaughter in the first degree, and his punishment was fixed at imprisonment in the penitentiary for a term of five years.

The evidence discloses that there had been some prior difficulties, in which guns and pistols had been used, between deceased and appellant, and that numerous threats had been made by deceased to kill appellant: also that appellant had formerly threatened to kill deceased.

It would be difficult for a record to disclose more clearly and vividly that there was "bad blood" between the deceased and his slayer. It should be said, though, we think, that the overwhelming weight of the evidence goes to show that deceased was determined to have the town council discharge the appellant from his position as town marshal, coupling his insistence to this end with his expressed intention of killing appellant, should the town council not so discharge him, and that the town council had refused to discharge him.

Sollie & Sollie, of Ozark, R. W. Miller, of Abbeville, and O. S. Lewis, of Dothan, for appellant.

With the feeling between deceased and appellant as we have indicated above, upon the occasion of the fatal difficulty, appellant met deceased upon one of the streets of Abbeville, and, in the difficulty which ensued, shot and killed him.

The plea on the trial was self-defense. Appellant's testimony, and that offered in his behalf, tended to support said plea. The testimony on behalf of the state tended to show an unjustifiable homicide.

The contention of the state, as its testimony indicated, and tended to support, was that, immediately prior to the fatal encounter, appellant was, for some time inside the building of the Abbeville State bank, at a point near a table or desk from which, through a window, he could and did see the deceased coming up the street past a certain store, and that, when deceased had reached a certain point, appellant walked out of the bank building and met and shot the deceased.

The contention of the appellant was that, from the point where he was in the said bank building, at the time mentioned, he could not and did not see the deceased approaching, but that, his business in the bank being concluded, he walked out of the said bank building and casually or unexpectedly met the deceased coming up the street.

In other words, the question of whether or not appellant purposely encountered deceased in the street on the occasion of the fatal shooting was one of the litigated questions in the case. Its solution or answer was important as for its bearing upon the credibility of the testimony relating to appellant's acting in self-defense vel non when the shooting took place. The testimony on this question (i. e. as to whether or not appellant could, from the named location inside the said bank building, see deceased, as he came up the street to the point, near said building, where he met appellant) was in conflict. And the answer to the question, as we have shown, was very material.

Appellant, filed a motion for a new trial, and properly presents for review the action of the court in overruling it. The said motion for a new trial was based upon the alleged misconduct of the jury trying the case, and said alleged misconduct may be conveniently stated by quoting literally from one of the affidavits filed on the hearing of said motion, as follows:

"My name is Bob Freeman. I am one of the deputies who were in charge of the jury who tried Wheeler Arrington for killing Will Bethune; on Saturday evening August 18th, 1928, after the case of the State v. Wheeler Arrington was closed, the Judge's charge given the jury, and the jury retired to consider the case, and as night approached, I and Lee Stokes, the other deputy sheriff in charge of the jury with me, took the jury to Mrs. Bedsole's for supper, and on our return we walked up the sidewalk which led just in front of the store occupied by Loeb Kraselsky on the southwest of the public square, at the time Will Bethune was killed, and when we reached the north side one

of the jurors said 'let's go up this way' and walked on up said sidewalk toward the Abbeville State Bank and when they got near to the south side or south east corner of said bank building several of said jurors left the sidewalk and went to the east window in the south side of said bank building and looked in through said window at a little table or desk which was sitting in said bank building near the front entrance and on the north side of said entrance to said bank, and then they turned and looked down the street and sidewalk towards the Loeb Kraselsky store. * * *"

There were a number of affidavits, all of which are before us, filed on the hearing of said motion, and no oral testimony taken on said hearing. There is some conflict between the affidavits filed on behalf of the movant and those filed on behalf of the state, but whether said conflict is as to a matter which is material on the question of whether or not said motion was properly overruled, we need not decide since we have no difficulty in concluding, and do conclude, from a reading of all of said affidavits, that it satisfactorily appears that the facts are substantially as shown by the above quotation.

Perhaps we should say that the bank building, window, table, or desk, and store, referred to in the affidavit which we have quoted from, are the same as those described in the conflicting testimony mentioned in the seventh and eighth paragraphs of this opinion, above.

■ "A new trial should ordinarily be granted when jurors, without the authority of the court or consent of the parties, have examined or inspected a place or thing which is the subject of conflicting evidence. * * * That the juror was actually influenced by the examination or inspection need not be shown. It is sufficient that he may have been so influenced." 29 Cyc. 801.

The above quotation from Cyc. seems to state, in a general way, what the law of our own state on the question before us demands or requires.

We do not seem to have had a case in this state based upon facts similar in all respects to those shown here, but the general principle, that "Courts have condemned the reception of any evidence by the jury in a criminal case outside of that produced at the trial—as an improper and unauthorized view or inspection of the locus in quo made with the purpose of understanding or illustrating the evidence and having a tendency to influence," seems well established. Leith v. State, 206 Ala. 439, 90 So. 687. True, the majority of the court, in the Leith Case, did not agree with the writer of the opinion as to the conclusion in the said case, but the quotation we have adopted seems to have

had the approval of the full court. At any rate, from a rather exhaustive study of the cases, we are of the opinion, and so hold, that such is the law in Alabama.

■ We are clear to the conclusion that the conduct of the jurors in this case in inspecting the window in the bank building by looking into it, and at the table or desk, and then turning to look toward the Kraselsky store, was for the purpose of seeing for themselves whether one situated as the appellant was shown to be just immediately before meeting deceased and killing him, could see one coming as the testimony showed deceased to have been coming. And this conduct of these jurors, whether one or more of them, was improper and unauthorized.

■ We are not called upon to say whether their said conduct did in fact injure the appellant. For the rule in such cases is as stated by Bricken, J., in the case of Driver v. Pate, 16 Ala. App. 418, 419, 78 So. 412, 413: "It need not be shown, necessarily, that the misconduct relied on as a ground for a new trial actually controlled or determined the verdict, if it is made apparent that the verdict might have been affected by it." Kansas City, M. & B. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65; Alabama Fuel & Iron Co. et al. v. Rice, 187 Ala. 458, 65 So. 402.

Here it cannot be said, we think, that the misconduct of the jurors shown did not affect the verdict returned. It *might* have done so.

■ The fact that appellant was convicted of the offense of only manslaughter in the first degree does not, in our opinion, show that he suffered no injury by the above-unauthorized action of the jury. It is entirely possible that the jurors making the unauthorized inspection of the named premises might have been influenced to disbelieve appellant's testimony, and that this might have led them to vote for his conviction of manslaughter, whereas, without the inspection, they might have believed from his testimony he should be acquitted. As said by the Supreme Court of our state in the opinion in the case of Craig & Co. v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803: "So delicate are the balances in weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion." This, spoken in reference to the misconduct of a party litigant toward a juror, but in our opinion applicable as well to misconduct, as here, on the part of the jurors themselves.

We therefore conclude and hold that the trial court erred in overruling appellant's motion for a new trial.

It seems unnecessary to pass upon the other questions apparent. None of them involve intricate questions of law, and perhaps none of them will arise in their present form upon another trial. The record as a whole gives evidence of the trial having been fairly and ably conducted by the learned judge who presided.

But for the error in overruling appellant's motion for a new trial on the ground of the misconduct, perhaps induced by thoughtlessness, but none the less forbidden, on the part of the jury trying the case, the judgment of conviction must be, and is, reversed, and the cause remanded.

Reversed and remanded.