PATTERSON, Judge.
Appellant, Denise Oliver Crowell, was charged with driving under the influence of alcohol, speeding, and improper lane usage, in violation of several ordinances of the City of Montgomery, Alabama. Appellant was found guilty on all charges in the municipal court. She appealed to the circuit court, where she was again found guilty on all charges. For her driving under the influence conviction, she was sentenced to a suspended six-month sentence with supervised probation; was ordered to serve 80 hours of community service, pay $20 to the Crime Victim’s Compensation Fund, and pay court costs; and was fined $350. For the remaining two convictions, *1131 appellant received $50 fines and was ordered to pay court costs. Appellant raises two issues.
I
Appellant contends that the trial court erred in ruling that she could not testify as to her condition of intoxication at the time of her arrest.
The record reveals the following:
“Q. MR. KIRK [Defense Counsel]: Now, when you left there at 6:00 o’clock, Ms. Crowell, I want you to tell the members of the jury, did you feel in any way that your legs or your arms or your mental processes or your physical abilities were affected in any way by what you had drunk over that period of time?
“A. [APPELLANT] No.
“MR. GUY [Prosecutor]: Your Honor, Pm going to object to that. It’s self-serving.
“THE COURT: I’m going to sustain the objection.
“MR. KIRK: Your Honor, forgive me, are you saying I do not have the right to inquire as to her opinion?
“THE COURT: In the form you asked it, I’m going to sustain the objection.
“Q. (BY MR. KIRK:) I ask you, please, ma’am, based on what you had drunk, did you in any way feel affected physically or mentally?
“MR. GUY: Your Honor, again I object.
“THE COURT: I’m going to sustain the objection.
“Q. Ma’am, did you have an opinion, based on what you had drunk and your experience in life, were you under the influence?
“MR. GUY: I object to that, Your Honor.
“THE COURT: I’m going to sustain the objection, Mr. Kirk. That’s going to be an issue for this jury to determine in this case, based on the two of you giving the evidence before them.
“MR. KIRK: Your Honor, if I understand you, the Court is saying I have no right to ask her opinion of her own condition?
“THE COURT: That’s not what you asked, what her condition was. But I’ve sustained Mr. Guy’s objection.
“Q. (BY MR. KIRK:) Ms. Crowell, I need to ask you please, ma’am, at the time you left there did you feel like your — did you have an opinion as to whether you were physically impaired in your movement?
“MR. GUY: Again I object.
“THE COURT: I’m going to sustain the objection, Mr. Kirk. You have brought out in evidence — Go ahead and ask her what she did next. I think that’s the proper line of questioning. I’m going to sustain his objection and ask you not to ask it again. I’ve ruled on it about three times.”
The trial court then explained, outside the jury’s presence, that it would not allow appellant to give any testimony about whether or not she was impaired or intoxicated because the issues of impairment and intoxication are for the jury and, moreover, any testimony from appellant, on these points, would be self-serving.
We know of no rule of law that would prohibit a defendant from testifying about his or her state of intoxication and accompanying characteristics. The city argues that any such testimony would constitute an impermissible “self-serving declaration.” Section 242.02 in C. Gamble, McEl-roy’s Alabama Evidence (3d ed. 1977), is cited as authority for this position. However, as recognized in the cited section, as well as by the city, the rules pertaining to “self-serving declarations” apply only to extrajudicial declarations.
The city also contends that any such testimony by a defendant goes to the ultimate fact in issue to be decided by the trier of fact. This argument has been rejected in regard to witnesses other than a defendant. See, e.g., Sanders v. City of Birmingham, 542 So.2d 325, 330 (Ala.Cr.App.1988); Grimes v. State, 491 So.2d 1053, 1055 (Ala.Cr.App.1986); Grimes v. State, 488 So.2d 8 (Ala.Cr.App.1986). In fact, the arresting officer testified that, in *1132 his opinion, appellant was under the influence of alcohol to the point that she was an impaired driver. We know of no reason to exclude a defendant from giving his or her opinion. Opinion testimony as to intoxication or sobriety is not restricted to expert testimony. Sanders, 542 So.2d at 329; Patterson v. State, 518 So.2d 809, 813 (Ala.Cr.App.1987). A nonexpert witness who lacks medical training may testify as to the general nature of his or her own physical condition. 31A Am. Jur.2d, Expert and Opinion Evidence § 201 (1989). See also C. Gamble, supra, at § 128.10(4).
In State v. Persell, 468 S.W.2d 719, 721 (Mo.App.1971), the trial court refused to allow the appellant to give his opinion as to whether he was under the influence of alcohol at the time in question and to give evidence of his safe operation of his vehicle. After recognizing the value and relevancy of such testimony, the reviewing court held that the refusal to allow the testimony was prejudicial and, thus, that reversal was warranted. Id. Accord, State v. Ellsworth, 468 S.W.2d 722 (Mo.App.1971). See also Sanderson v. Frawley, 273 Wis. 459, 78 N.W.2d 740, 743 (1956) (wherein the court held that, in a civil case wherein the defendant driver was being sued by a passenger, the defendant’s testimony that the effect of his consumption of beer was noticeable in his talk was permissible as “a layman’s effort to describe his perceptible condition, and its probative value was for the jury to assess”).
Accordingly, we find that the trial court’s refusal to allow appellant to testify to her alleged state of sobriety and accompanying characteristics unconstitutionally infringed on her right to testify. “[R]es-trictions of a defendant’s right to testify may not be arbitrary_” Rock v. Arkansas, 483 U.S. 44, 55-56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987).
II
The evidence was given, in entirety, on the first day of trial. Prior to the closing arguments, which were to be given at the beginning of the second day of proceedings, the trial court revealed, to the parties, that a juror had informed the trial court that, on her way to court that morning, she had driven down those portions of Atlanta Highway and Madison Avenue that appellant was observed driving on when she was allegedly committing the charged offenses. The court further informed the parties that, after being assured that the juror had not discussed her unauthorized visit to the scene with anyone, it had instructed the juror not to discuss her view of the scene and to not consider it in her deliberations. Then the juror was brought into chambers, with all parties present, and the following occurred:
“THE COURT: .... Is that your normal route to come this way?
“MS. BOWDEN: No. Normally I come the interstate. But the last two mornings when I’ve come it’s been so congested that I thought, well, I’ll see if there’s another way. So then I thought, well, I’ll come down Madison Avenue.
[[Image here]]
“THE COURT: Did you drive that way for the purpose of viewing the speed zone signs and the condition of the street between Panama and Hopper?
“MS. BOWDEN: I kind of wanted to see what the road was like. I knew at one time it had been torn up.”
The condition of the road surface of Madison Avenue was a contested fact at trial. The arresting officer testified that the right-hand lane of Madison Avenue was safe for automobile travel and that nothing, on May 8, 1988, would have prevented appellant from travelling safely in the right and left lanes. However, the defense theorized that the right lane of Madison Avenue was in poor condition and that this condition was the reason for appellant’s erratic driving. On cross-examination, defense counsel elicited from the officer that, at the intersections on Madison Avenue, the road inclines and that, on the curb line, there are gutters with steel grates. However, he also testified that, on that street, he travels in one lane; that he does not often observe a driver move from lane to lane; and that he has no difficulty “in staying in the right lane.” Appellant testi *1133 fied that she swerved from lane to lane “to move for the bumps, you know, when you get to each little intersection.” In addition, the arresting officer’s recollection of the two speed limits was different from that of appellant.
The court in Arrington v. State, 23 Ala. App. 201, 202,123 So. 99, 101 (1929), recognized the following as the law in this State:
“ ‘A new trial should ordinarily be granted when jurors, without the authority of the court or consent of the parties, have examined or inspected a place or thing which is the subject of conflicting evidence. * * * That the juror was actually influenced by the examination or inspection need not be shown. It is sufficient that he may have been so influenced.’ 29 Cyc. 801.
[[Image here]]
“[T]he general principle, that ‘Courts have condemned the reception of any evidence by the jury in a criminal case outside of that produced at the trial — as an improper and unauthorized view or inspection of the locus in quo made with the purpose of understanding or illustrating the evidence and having a tendency to influence,’ seems well established. Leith v. State, 206 Ala. 439, 90 So. 687.”
In the instant case, the juror, in effect, admitted that her unauthorized and improper visit was for the purpose of resolving the material conflict between the arresting officer’s testimony and appellant’s testimony on the condition of Madison Avenue and its effect on a driver. The resolution of this conflict surely had a bearing on the juror’s assessment of the two witnesses’ credibility. Although the juror assured the court that her view did not change her opinion of the testimony and that she could disregard it and base her verdict solely on the testimony and the court’s instructions, we are inclined, under the attendant circumstances and out of an abundance of caution, to reverse the trial court’s ruling. See Ex parte Lasley, 505 So.2d 1263, 1264 (Ala.1987) (wherein the court held that application of the rule mandating reversal for juror misconduct which might have influenced the verdict “cannot in all cases depend entirely upon the jurors’ statements that the extraneous information did not affect their verdict” for “[t]he jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced”). We emphasize that, in making this decision, we have been persuaded by the fact that the charge of driving while intoxicated must be retried anyway and that, since the facts supporting the other two charges must be again presented to a jury, it would be no waste of judicial resources to submit the two remaining charges to the jury. Upon these considerations, we are not willing to hold that the juror’s unauthorized and improper view of the streets involved had no effect; rather we find that the particulars of this case and our treatment of it on appeal warrant a holding that the juror may have been influenced.
Accordingly, this cause is due to be, and it is hereby, reversed on both issues raised by appellant.
REVERSED AND REMANDED.
All Judges concur.