MONTIEL, Judge.
The appellant, Willie Junior Potter, was charged with manslaughter, in violation of § 13A-6-3(a)(l), Code of Alabama 1975. A jury found the appellant guilty of the lesser included offense of criminally negligent homicide. The appellant was sentenced pursuant to the Habitual Felony Offender Act to 15 years’ imprisonment. He was ordered to pay restitution, court costs, attorney’s fees and a crime victim’s assessment.
The facts adduced at trial tend to show the following. On April 15, 1991, the appellant was involved in a motor vehicle accident on Springfield Avenue in Gadsden, Alabama. A Gadsden police officer, Regina Gartman, arrived at the scene of the accident. She saw a man, identified as Fred Crowser, Sr., lying face down on the sidewalk. Mr. Crowser was unconscious. The officer asked the crowd of people who was the driver of the vehicle involved in the accident and the appellant stated that he was.
Officer Gartman proceeded with her investigation surrounding the accident. At first, the appellant told Officer Gartman that the last thing he remembered was that a car pulled out in front of him and that he did not know what happened next. According to Officer Gartman, the appellant told her that he was travelling about 40 to 45 miles per hour.
After talking with the appellant, Officer Gartman arrested him for driving under the influence of alcohol. An intoxilyzer test given to the appellant which indicated that the appellant had a .208 blood alcohol content.
The victim had sustained an open fracture to his leg and injuries to his head. He was *257 initially treated at a nearby hospital, but was later transferred to UAB hospital. Mr. Crowser’s blood alcohol content was .137 after the accident according to hospital records. Mr. Crowser’s leg had to be amputated and, on June 20, 1991, Mr. Crowser died.
I
The appellant argues that the trial court erred in allowing Officer Gartman to testify to the appellant’s statements that he made on the night of the accident because the appellant had not been advised of his Miranda rights before the police officer questioned him.
Officer Gartman was investigating the accident during the time that she was talked with the appellant. She testified that the appellant was not in custody during her questioning, but that the appellant was not free to leave the scene since she needed information from him. It is apparent from the facts of the case, that when Officer Gart-man was questioning the appellant regarding the accident, she did not believe that a crime had been committed. When the officer got close to the appellant while investigating the accident, she smelled alcohol on his breath. When the appellant was looking for his wallet in his vehicle, the officer saw an alcoholic beverage in the vehicle. At this point, the officer had probable cause to arrest the appellant for driving under the influence.
The appellant contends that he should have been advised of his Miranda rights before he was asked any questions regarding the accident. We disagree.
“Miranda does not apply to traditional investigatory functions such as general on-the-scene questioning.” Smith v. State, 515 So.2d 149, 152 (Ala.Crim.App.1987). Additionally, the procedures set forth in Miranda do not apply when one is not in custody. Landreth v. State, 600 So.2d 440 (Ala.Crim. App.1992). While Officer Gartman testified that the appellant was not free to leave the scene because she needed information from him, such as his driver’s license number, he was not in custody. This Court has stated:
. “ ‘It is the compulsive aspect of custodial interrogation, and not the strength or content of the officer’s suspicions at the time the questioning was conducted, which led the Court to impose the Miranda requirements with regard to custodial questioning.’ ” Finch v. State, 518 So.2d 864, 867 (Ala.Crim.App.1987). ‘The Court has “explicitly recognized that Miranda warnings are not required’ ... ‘because the questioned person is one whom the police suspect.”’ California v. Beheler, 463 U.S. [1121] at 1125, 103 S.Ct. [3517] at 3520, 77 L.Ed.2d 1275 (quoting Oregon v. Mathiason, 429 U.S. 492 [495], 97 S.Ct. [711] 714 [50 L.Ed.2d 714 (1977) ] (footnote omitted), ‘[i]t is settled that the safeguards prescribed by Miranda become applicable [only when] a suspect’s freedom of action is curtailed to a “degree associated with formal arrest.’” Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)).”
Henderson v. State, 598 So.2d 1045 (Ala. Crim.App.1992) (quoting Lemley v. State, 599 So.2d 64 (Ala.Crim.App.1992)).
Here, the appellant was not in custody to the extent that the Miranda requirements had to have been met. Since the officer was merely conducting a general on-the-scene investigation, with regard to the accident, Miranda warnings need not have been given. Jackson v. State, 412 So.2d 302, 306 (Ala.Crim.App.1982).
II
The appellant asserts that the trial court erred in failing to grant the appellant’s motion for a new trial since several of the jurors visited the scene of the accident during jury deliberations. At the hearing on the motion for a new trial, 11 jurors testified that a few jurors, individually, had gone out to the scene of the accident to determine how narrow the road was and told the other jurors that the road was narrow. However, each of the jurors testified under oath that the fact that some jurors went to the scene of the accident and stated that the road was narrow, did not affect their verdict. None of the jurors believed that visiting the scene of the accident affected the verdict of the jury. Moreover, *258 the width of the road was not a fact in dispute between the parties.
The fact that some of the jurors went to the scene of the accident does not necessarily warrant a new trial. See Marshall v. State, 598 So.2d 14, 17 (Ala.Crim.App.1991). We are mindful of our holding in Crowell v. City of Montgomery, 581 So.2d 1130, 1133 (Ala.Crim.App.1990), in which we upheld the following law with regard to this issue:
“ ‘A new trial should ordinarily be granted when jurors, without the authority of the court or consent of the parties, have examined or inspected a place or thing which is the subject of conflicting evidence. * * * That the juror was actually influenced by the examination or the inspection need not be shown. It is sufficient that he may have been so influenced.’ ”
Id. (quoting Arrington v. State, 23 Ala.App. 201, 202, 123 So. 99, 101 (1929)).
In Crowell, a juror went to the scene of an offense because she was curious about the condition of the road to resolve a “material conflict between the arresting officer’s testimony and appellant’s testimony.” Id. Despite the fact that the juror informed the trial court that she could render her verdict solely upon the testimony and the trial court’s instructions, this court, due to the attendant circumstances and “out of an abundance of caution,”[1] reversed and remanded the case for a new trial. Id.
In the instant case, however, the width of the road was not a material subject of dispute between the parties and did not tend to shed any light upon the credibility of the witnesses as in Crowell. Therefore, the appellant cannot show that he was prejudiced. While this court recognized in Crowell that the appellant need not establish that the jurors were actually influenced by viewing the scene, the appellant must show that the purported misconduct affected the verdict or that the extraneous facts presumptively establish prejudice to him. Minshew v. State, 594 So.2d 703, 716 (Ala.Crim.App.1991); See Smith v. State, 588 So.2d 561, 579 (Ala.Crim. App.1991). “As a general rule, ‘[w]here extraneous material [is] introduced into the jury’s deliberations, ... actual prejudice [must] be shown to work a reversal of the verdict.’ ” Minshew, 594 So.2d at 716 (quoting Nichols v. Seaboard Coastline Ry., 341 So.2d 671, 672 (Ala.1979)). Here, the appellant is unable to establish that he was actually or presumptively prejudiced because the jurors testified that their verdict was not affected and because the width of the road was not a material subject in dispute.
Moreover, just as the trial court has discretion in determining whether the conduct of jurors is so prejudicial to the defendant as to warrant a mistrial, Marshall 598 So.2d at 17, the trial court should have discretion in determining whether the conduct of jurors is so prejudicial to the defendant to warrant a new trial. We should not overturn the trial court’s determination absent a showing of abuse of its discretion. Id. As the appellant has faded to establish actual or presumptive prejudice, he is not entitled to a new trial.
Ill
The appellant argues that the trial court erred in sentencing him pursuant to the Habitual Felony Offender Act. Specifically, the appellant asserts that the jury found him guilty of criminally negligent homicide pursuant to § 13A-6-4, Code of Alabama 1975, which statute, according to the appellant, contains its own sentence enhancement provision. Because the appellant argues that § 13A-6-4 contains its own enhancement provision, he contends that it is unlawful to further enhance his sentence under the Habitual Felony Offender Act.
Section 18A-6-4(c), Code of Alabama 1975, essentially provides that criminally negligent homicide is a class A misdemeanor unless the criminally negligent homicide is caused by a driver of the vehicle was driving in violation of § 32-5A-191, Code of Alabama 1975, in which case the offense is a class C felony. In the instant case, the State presented evidence that the appellant committed the offense of criminally negligent homicide while *259 he was also driving under the influence. Thus, the appellant’s offense was treated as a class C felony.
The appellant cites Ex parte Chambers, 522 So.2d 313 (Ala.1987) as authority for his argument that § 13A-6-4, Code of Alabama 1975 contains its own sentence enhancement provision. In Ex parte Chambers, the Alabama Supreme Court held that the appellant, a repeat drug offender, who was sentenced pursuant to the Uniform Controlled Substances Act, § 20-2-1 et seq., was not subject to sentencing under the Habitual Felony Offender Act. The Court’s reasoning was that the Uniform Controlled Substances Act contained its own sentencing provisions which were outside the scope of the Criminal Code. Id. at 315-16. The Court stated, “Because the sentences applicable to drug offenses and repeat drug offenses are provided within the Controlled Substances Act, we hold that defendants convicted thereunder must be sentenced according to its provisions, not the sentencing provisions of Title 13A.” Id. at 316 (footnote omitted).
In this case, however, the appellánt was convicted and sentenced under the Criminal Code. The appellant was found guilty of violating § 13A-6-4, rather than an offense outside the scope of Title 13A such as the defendant in Ex parte Chambers. Moreover, driving under the influence is an element of the class C felony offense of criminally negligent homicide. Section 13A-6-4 does not enhance the appellant’s punishment based upon his prior felony convictions. Therefore, the appellant’s argument fails and we uphold the trial court’s sentence under the Habitual Felony Offender Act.
IV
The appellant asserts that the State failed to produce sufficient evidence of the corpus delicti. Specifically, the appellant alleges that there was insufficient evidence as to how the accident happened, as to whether the appellant acted recklessly at the time of the accident, and as to the cause of death of the victim. We disagree.
The appellant correctly states that in order to establish the corpus delicti of an offense the State must establish the death of the victim named in the indictment and that the death was caused by the criminal agency of the defendant. Scanland v. State, 473 So.2d 1182 (Ala.Crim.App.), cert, denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985).
Here sufficient evidence was presented as to the corpus delicti of the crime. The State clearly established that the victim named in the indictment died. The victim ultimately died of respiratory failure approximately two months after he was struck by the appellant’s vehicle. As to whether the appellant struck the victim with his vehicle, Officer Gartman testified that the appellant’s vehicle was badly damaged. Officer Gart-man also testified that the appellant stated he was the driver of the vehicle which was involved in the accident. The appellant argues that the mere fact that the accident occurred does not establish criminal conduct on his part. However, here, evidence was presented to establish criminal conduct on the part of the appellant. The weight of the evidence and the inferences to be drawn from the evidence are matters for the jury to determine. See Kissic v. State, 594 So.2d 227 (Ala.Crim.App.1991).
As to whether the appellant’s striking the victim was the cause of the victim’s death, one doctor, who treated the victim testified that the victim’s injuries were consistent with injuries sustained by a moving object. Another attending physician testified that although the victim died of respiratory failure, he could state within a reasonable degree of medical certainty that if the victim had not sustained the injuries from the automobile accident, the victim would not have died as a result of respiratory failure. The doctor testified that respiratory failure is the final symptom of the injuries the victim sustained from being struck by the accident. “ ‘A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient.’ ” Johnson v. State, 552 So.2d 883, 887 (Ala.CrimApp.1989) (quoting, § 13A-2-5(a), Ala.Code (1975)). *260 Thus, sufficient evidence as to a causal connection between the appellant’s striking the victim and the victim’s death was presented.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur except TAYLOR, J., who dissents with opinion.

. This Court decided to reverse and remand Crowell for a reason other than the fact that a juror had visited the scene of the crime. Crowell, 581 So.2d at 1131-32.