807 So.2d 573 (1999)
Mickey Wayne BURNETT
v.
STATE.
CR-98-0543.
Court of Criminal Appeals of Alabama.
September 17, 1999.
Rehearing Denied October 22, 1999.
*574 Virginia A. Vinson, Birmingham, for appellant.
Bill Pryor, atty. gen., and Stephen N. Dodd, asst. atty. gen., for appellee.
BASCHAB, Judge.
The appellant, Mickey Wayne Burnett, was convicted of three counts of vehicular homicide, violations of § 32-5A-192, Ala. Code 1975. The trial court sentenced him to five years in prison on each count, but split the sentences and ordered him to serve consecutive terms of one year in prison followed by four years on probation *575 on each count. It further ordered that, as a condition of his probation, he could not drive at any time for any reason. The appellant filed a motion for a new trial, which was denied by operation of law. This appeal followed.

I.
The appellant first argues that § 32-5A-192, Ala.Code 1975, is unconstitutional because it "impos[es] felony sanctions in the absence of a culpable mental state." (Appellant's brief at p. 5.) Section 32-5A-192 contains two terms that could be read to define the state of mental culpability for vehicular homicide"unlawfully" and "unintentionally." Because we find that the term "unlawfully" defines the culpable mental state required under that statute, the appellant's argument is not well-taken.
Section 13A-2-2, Ala.Code 1975, specifically defines four states of mental culpability: "intentionally," "knowingly," "recklessly," and "criminal negligence." Although the Alabama Criminal Code does not define "unlawfully" as that term is used in § 32-5A-192, "it seems apparent that those who helped to draft the Alabama Criminal Code were aware of the problems caused when statutes set out a culpable mental state and express it in different words." Ex parte Harper, 594 So.2d 1181, 1189 (Ala.1991), cert. denied, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 248 (1992). The commentary to § 13A-2-2 points out that the drafters of the Criminal Code recognized states of mental culpability other than those defined in that section:
"It would be impossible to review, much less reconcile and make clear and uniform, the myriad of Alabama statutes and cases that have employed or discussed some term of mental culpability. Such mental terms and concepts, while necessarily difficult to articulate, sometimes have been vaguely or only partly defined, or otherwise seem imprecise or inconclusive, unclear or ambiguous, even confusing or contradictory, or overrefined with technical, obscure and often subtle, if not dubious, distinctions. These adverbial terms include, e.g.: `intentionally,' `willfully,' `purposely,' `designedly,' `knowingly,' `deliberately,' `maliciously,' `with premeditation,' `recklessly,' `negligently,' `with culpable negligence,' `with gross negligence,' `with criminal negligence,' `without due caution,' `wickedly,' `unlawfully,' `wrongfully' and scores of others."
(Emphasis added.) Based upon this commentary, we conclude that, although "unlawfully" is not one of the terms specifically defined in § 13A-2-2, the legislature intended for that term to be recognized as a state of mental culpability when used in a statute defining a criminal offense.
Because the Criminal Code does not define "unlawfully," we must determine where that term falls on the continuum of mental culpability in relation to those terms that are specifically defined in § 13A-2-2. First, we note that "unlawfully" does not convey the same meaning as "intentionally" because the term "un intentionally" is used in § 32-5A-192. Second, the Alabama Supreme Court has already determined that "unlawfully" cannot be equated with the culpable mental state of "knowingly" defined in § 13A-2-2. Ex parte Harper, 594 So.2d at 1190-91. Finally, in Ex parte Long, 600 So.2d 982 (Ala.1992), the Alabama Supreme Court "reinterpret[ed] the relative degrees of culpability of vehicular homicide and criminally negligent homicide," stating that vehicular homicide "will ordinarily be a more culpable offense than criminally negligent homicide." 600 So.2d at 987. Therefore, the culpable mental state of "unlawfully" must fall on the continuum of culpability somewhere between "knowingly" and "criminal negligence."
We must now attempt to discern the meaning of the term "unlawfully" as it appears in § 32-5A-192. Under the "plain meaning" theory of statutory construction, we must accord a term its common and *576 ordinary meaning when that term is not defined in the Code.
"When the plain meaning of a statute can be gleaned from its words, it should be so construed. It is well accepted that this court, in interpreting a statute, `will give words used in a statute their "natural, plain, ordinary, and commonly understood meaning."` Ex parte Etowah County Board of Education, 584 So.2d 528, 530 (Ala.1991); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984); Morgan County Commission v. Powell, [292 Ala. 300,] 293 So.2d 830 (Ala.1974)."
R.T.M. v. State, 677 So.2d 801, 803-04 (Ala.Cr.App.1995).
Black's Law Dictionary 1536 (6th ed.1990) defines the term "unlawful" as follows:
"That which is contrary to, prohibited, or unauthorized by law. That which is not lawful. The acting contrary to, or in defiance of the law; disobeying or disregarding the law. Term is equivalent to `without excuse or justification.'"
(Emphasis added.) Consistent with this definition, early caselaw recognized that "unlawful" means without legal excuse or justification. See Williams v. State, 27 Ala.App. 504, 175 So. 335 (1937); Randle v. Payne, 39 Ala.App. 652, 107 So.2d 907 (1958) (Cates, J., dissenting), cert. denied, 268 Ala. 697, 107 So.2d 913 (Ala.1959); Tatum v. State, 66 Ala. 465 (1880). Based on these definitions, we conclude that the term "unlawfully," as it is used in § 32-5A-192, means "without legal excuse or justification." Therefore, a person commits the offense of vehicular homicide when he or she, acting unintentionally and without legal excuse or justification, proximately causes the death of another individual while violating regulatory laws governing the operation of automobiles and traffic control.
For these reasons, we conclude that the term "unlawfully," as it is used in § 32-5A-192, describes the culpable mental state required for vehicular homicide. Therefore, the appellant's argument is without merit.

II.
The appellant's second argument is that the evidence was not sufficient to sustain his convictions because the State allegedly did not prove the corpus delicti of the homicides. He initially contends that the State did not establish the identities of the victims because no one testified that the individuals named in the indictment were in fact dead. He also claims that the State did not establish the cause of the victims' deaths.
To prove the corpus delicti of a homicide, the State must establish the death of the victim named in the indictment and that the death was caused by the defendant. See Potter v. State 661 So.2d 255, 259 (Ala.Cr.App.1993); Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). "[A] homicide victim's identity can be established by circumstantial evidence. Todd v. State, 472 So.2d 707 (Ala.Cr.App.1985); Dolvin v. State, 391 So.2d 666 (Ala.Cr.App.1979), aff'd, 391 So.2d 677 (Ala.1980)." Bui v. State, 551 So.2d 1094, 1099 (Ala.Cr.App.1988). Finally,
"[e]xpert testimony ... is not always necessary to establish the cause of death. Dismukes v. State, Ala. Cr.App., 346 So.2d 1170, reversed on rehearing, 346 So.2d 1175, cert. den. 346 So.2d 1177 (1977). The question whether, under all the circumstances, death was the result of the defendant's assault on the deceased, is one of fact for the jury. Dismukes, supra; Gurley v. State, 36 *577 Ala.App. 606, 61 So.2d 137 (1952); Hall v. State, 34 Ala.App. 246, 38 So.2d 612 (1949). If there is any proof, direct or circumstantial, to establish the corpus delicti, the issue is one of fact for the jury and not one of law for the court. McCall v. State, 262 Ala. 414, 79 So.2d 51 (1955); McDonald v. State, 56 Ala. App. 147, 320 So.2d 80 (1975); Cook v. State, 43 Ala.App. 304, 189 So.2d 595 (1966)."
Hollis v. State, 399 So.2d 935, 938 (Ala.Cr. App.1981).
In this case, the indictment charged the appellant with vehicular homicide in connection with the deaths of Lisa Williams Lewis, Marissa Lewis, and Nicholas Lewis. The evidence showed that Lisa Williams Lewis was driving south on Highway 195 in Winston County when her Chevrolet Beretta automobile was struck by a Chevrolet Corvette automobile driven by the appellant. Nicholas Lewis, Marissa Lewis, and Victoria Gravitt were passengers in the Beretta. Officer Tommy Elliott and State Trooper Mark McCormick testified that Lisa Williams Lewis and Marissa Lewis were dead when they arrived at the scene. Elliott, a certified emergency medical technician, performed CPR on Nicholas Lewis at the scene until an ambulance arrived to take him to the hospital. Elliott testified that, after he placed Lisa Williams Lewis and Marissa Lewis in the hearse and secured the scene of the accident, he went to the hospital and learned that Nicholas Lewis was dead when the ambulance arrived at the hospital.
McCormick, who had experience investigating traffic homicides, testified that, based on his observations of the skid marks at the scene, he concluded that the appellant's vehicle ran off of the roadway, reentered the highway, and started spinning. It spun into the southbound lane and hit the Beretta Lisa Williams Lewis was driving. According to McCormick, at the point of impact, the appellant "was nearly sideways in the southbound lane, traveling north in the southbound lane." (R. 73.) He also estimated that the appellant was traveling at a speed of at least 63 mph and that Lewis was traveling at a speed of 55 mph when the accident occurred. (R. 61-62.)
Based on the above-referenced testimony, the State presented sufficient evidence to establish that the victims named in the indictment were dead and that the collision with the appellant's vehicle caused their deaths. Accordingly, the appellant's argument is without merit.

III.
The appellant's third argument is that the trial court erroneously admitted "scientific evidence" to establish the rate of speed at which he was traveling before the accident. Specifically, he complains that the trial court should not have allowed McCormick to testify regarding a "dragsled test" he conducted, which showed that the appellant's vehicle was traveling at approximately 63 miles per hour when the accident occurred. After McCormick explained how the test was conducted, but before he testified about the results of that test, the following occurred:
"[Defense counsel]: I object. I don't think there is sufficient evidence for this test as to the reliability of it, common use of it.
"The Court: Do you want to qualify him any further?
"[Prosecutor]: Yes."
(R. 56.) The prosecutor then elicited further testimony to show the reliability of the test. When the prosecutor again questioned McCormick about the results of the test, the appellant did not renew his objection. Accordingly, the appellant did not *578 obtain an adverse ruling from which to appeal. Therefore, he did not properly preserve the issue of the reliability of the "drag-sled test" for our review. See Wright v. State, 740 So.2d 1147 (Ala.Cr. App.1999).
The appellant also challenges the relevance of the "drag-sled test." However, he raises this issue for the first time on appeal. Therefore, it is not properly before this court. See Finch v. State, 715 So.2d 906 (Ala.Cr.App.1997).

IV.
The appellant finally contends that the trial court erred when it ordered him not to drive during his probationary period. However, he did not object to this condition of his probation at the sentencing hearing, in his motion for a new trial, or in any other post-trial motion. Therefore, he did not properly preserve this issue for this court's review. See Long v. State, 530 So.2d 868 (Ala.Cr.App.1987).
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
LONG, P.J., concurs.
McMILLAN, J., concurs in the result.
COBB and FRY, JJ., dissent.
McMILLAN, Judge, concurring in the result.
I concur in the result reached in the main opinion. I do not believe that the statute defining the offense of vehicular homicide is unconstitutional because there is no requirement of a culpable mental state. However, I do not believe that the mere inclusion of the word "unlawfully" in the statute supplies the requisite mental state. I believe that the Alabama Supreme Court in Ex parte Long, 600 So.2d 982 (Ala.1992), and in Ex parte Jordan, 486 So.2d 485 (Ala.1986), was correct in determining where the culpability necessary for a finding of vehicular homicide lies within the range of homicide statutes in Alabama; specifically, that it is less than criminal recklessness as in manslaughter, but more than criminal negligence as in criminally negligent homicide. Moreover, the court in Ex parte Long, citing Ex parte Jordan, supra, determined that "`the range of statutes and ordinances that might support a conviction of vehicular homicide includes offenses that are more culpable than criminal negligence, such as § 32-5A-191, driving under the influence of alcohol as in Jordan, or § 32-5A-190, reckless driving, as the jury could have found [in Long.]'" Ex parte Long, supra, at 987.
I believe the Alabama Legislature intended to designate vehicular homicide as a Class C felony because it never involves merely simple negligence. Rather, a factual situation that would support a charge of vehicular homicide requires not only "criminal negligence," but also that the negligent or reckless act forming the basis of the offense must be illegal and must occur when the perpetrator is operating a vehicle or a vessel, either of which is a potentially deadly weapon. Most importantly, this negligent or reckless and illegal act committed under circumstances involving a potentially deadly weapon must be the proximate cause of the death. While the illegal act might be one of strict liability, the acts prohibited by the statute were necessarily so designated because their prohibition is vital to the public safety. Anyone operating a vehicle or a vessel is absolutely required to know and to be aware of these laws, and proof of intent is particularly difficult when applied to these laws. Furthermore, it is doubtless that a vehicle or vessel is a potentially deadly *579 weapon and requires a greater standard of care in its operation.
A necessary element of this offense is that the defendant's actions were the proximate cause of the victim's death, and this element must be proved beyond a reasonable doubt by the State. Thus, where the victim's actions were the cause of the death a defendant cannot be found not guilty of this offense. This causation is a factual matter to be determined by the jury after the State has submitted sufficient evidence to place the issue before the jury.
The defendant's unintentional conduct falls somewhere between recklessness and criminal negligence, depending on the exact unlawful act committed. However, it should be noted that, in Alabama, "criminal negligence" has been held to require more culpability than "simple negligence." The commentary to § 13A-6-4, Ala.Code 1975, states the following concerning the degree of culpability required for "criminal negligence:"
"Under § 13A-6-4(a)(1), `criminal negligence' means more than the negligence sufficient to establish tort liability. Several pertinent statements in the commentary to § 13A-2-2 are worth repeating:
"`"Recklessly" (subdivision 3) and "criminal negligence" (subdivision 4) are more difficult. A common denominator in both is that in each instance the underlying conduct must involve a "substantial and unjustifiable risk" that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and "consciously disregards" it. On the other hand, the criminally negligent offender is not aware of the risk created ("fails to perceive") and, therefore, cannot be guilty of consciously disregarding it. Thus, his culpability, though less than that of the reckless offender, is greater than that required for ordinary tort, or civil, negligence. The "substantial and unjustifiable" character of the risk involved and the requirement of "gross deviation" from the ordinary standard of care further distinguished the criminal from the mere tortfeasor.'
"Insistence that criminal negligence be of a higher degree than is required for civil liability is consistent with the generally accepted view. See, e.g., United States v. Pardee, 368 F.2d 368 (4th Cir.1966) (manslaughter by negligence is not made out by proof of ordinary simple negligence that would constitute civil liability. `The amount or degree or character of the negligence to be proven in a criminal case is gross negligence, to be determined on the consideration of all the facts of the particular case, and the existence of such gross negligence must be shown beyond a reasonable doubt'). Commonwealth v. Welansky, [316 Mass. 383,] 55 N.E.2d 902 (Mass.1944); State v. Blankenship, [229 N.C. 589,] 50 S.E.2d 724 (N.C.1948); Bell v. Commonwealth, [170 Va. 597,] 195 S.E. 675 (Va.1938); Annotation, 161 A.L.R. 10 (1946); Wechsler & Michael, A Rationale of the Law of Homicide, 37 Col.L.Rev. 701, 720-722 (1937); Working papers, Study Draft of a new Federal Criminal Code, Vol. 1, pp. 125-128.
"The term `negligently,' as defined by the Model Penal Code, requires significantly more than ordinary tort negligence....
"`. . . .
"The Proposed Revision Texas Penal Code takes a similar position:
"`Criminal negligence requires more culpability than the present law's (simple) negligence. It is akin to the gross negligence of tort law, *580 and requires a substantial and unjustifiable risk of death, the failure to perceive which constitutes a gross deviation from the standard of care an ordinary person would exercise. The fact-finder must view the circumstances from the actor's standpoint, but the standard of care is objective, that of the ordinary man.... The risk of death must be both substantial and unjustifiable to constitute criminal negligence, however, and not merely "apparent," ... as under present law....' Committee Comment, § 19.04."
The Legislature has mandated that only when criminal negligence is aggravated does the behavior properly constitute a Class C felony mandating that level of punishment. Thus, a criminally negligent homicide under § 13A-6-4(c) is a Class A misdemeanor, unless it is aggravated by a concomitant violation of § 32-5A-191, i.e., it is a criminally negligent homicide caused by driving a motor vehicle while under the influence. In that case, the homicide properly and constitutionally becomes a Class C felony. § 13A-6-4(c). In the case of vehicular homicide, when the criminal negligence is aggravated by the commission of an illegal act while operating a vehicle or a vessel that causes the death, the act properly and constitutionally becomes a Class C felony.
For the foregoing reasons, I concur in the result.
COBB, Judge, dissenting.
I understand the author of the main opinion has an interest in saving and buttressing Alabama's vehicular homicide statute, § 32-5A-192, Ala.Code 1975. However, I disagree with the effort to extrapolate a culpable mental state from the term "unlawfully." Though the main opinion attempts to supply a guilty scienter to this statute, even a brisk reading reveals none. Hence, I do not believe that the attempt to save this statute is legally sound. Therefore, I must respectfully dissent from the main opinion.
The State's evidence tended to prove the following. At approximately 9:35 p.m. on December 18, 1993, 16-year-old Mickey Burnett was driving his father's 1984 Chevrolet Corvette automobile north on Highway 195 in Winston County. He and a passenger were following another automobile to a friend's home in Haleyville. According to the state trooper who reconstructed the accident, Burnett was travelling around 63 miles per hour in a 55 mileper-hour zone. While the state trooper's notes indicate the road was dry, other witnesses recalled that the night was wet and foggy. It was cold; the temperature that night was around 35 degrees. As Burnett approached a curve in the road, his right front tire left the roadway and went onto the shoulder of the road. When Burnett attempted to bring the automobile back onto the pavement, he apparently overcorrected and put the Corvette into a spin. Burnett's automobile skidded out of control and crossed the roadway into the southbound lane, where it struck a Chevrolet Beretta automobile being driven by a woman who had three young children as passengers. Upon impact, the driver and her 22-month old daughter were ejected from the car and killed. Her eight-year-old son survived the impact, but died shortly after being taken to the hospital. Another child survived. Both Burnett and his passenger were ejected from their automobile, which was totally destroyed by the impact. Both were seriously injured, but both survived. Alcohol was not a factor. Burnett had just turned 16 in September of that year and did not have a criminal record.
*581 This is not a case which a defendant was drinking and driving, playing "chicken" or racing on the highway, or using a car as a weapon against pedestrians. This is a case of a 16-year-old newly licensed driver who, through negligence, lost control of his car on a dark country highway. Unfortunately for all concerned, a horrible tragedy occurred, and an innocent young mother and her two children were killed when Burnett's vehicle skidded out of control into the oncoming lane of traffic and struck their car. The question is, did Burnett have the necessary criminal intent to commit a felony, the punishment for which is imprisonment for three years? We do not know the answer because the vehicular homicide statute is silent as to the culpable mental state necessary for the offense.
In pertinent part, § 32-5A-192 states:
"(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle ... or to the regulation of traffic ... shall be guilty of homicide when the violation is the proximate cause of death."
(Emphasis added.)
The trial court instructed the jury on the elements of vehicular homicide, as charged in the indictment, as follows:
"[T]he first element is that [a particular person] is dead.
"Second, that the defendant Mickey Wayne Burnett unlawfully and unintentionally caused the death of [a particular person] with a vehicle.
"Three, that the defendant was engaged in speeding, reckless driving, driving on the wrong side of the road, or any combination of those three which apply to the operation or use of a vehicle or regulation of traffic.
"And four, that the act was the proximate cause of the death of [a particular person.]"
(R. 130-31.)
The Alabama Constitution of 1901, Art. I, § 6, provides in part that "[no person shall] be deprived of life, liberty, or property, except by due process of law." "Legislative power to impose criminal sanctions to any conduct is restrained by the constitutional command that no person can be deprived of life, liberty, or property, except by due process of law." Smith v. People, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Justice Cook, in his concurring opinion in Ex parte Knowles, 689 So.2d 832, 834-35 (Ala.1997), voiced his concern that the vehicular homicide statute, which allows the imposition of criminal felony sanctions for an act of simple negligence, encroaches on the constitutional guarantees of due process. I share that concern.
The Alabama Code defines homicide thusly: "A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence causes the death of another person." § 13A-6-1, Ala.Code 1975. In Ex parte Long, 600 So.2d 982 (Ala.1992), the Alabama Supreme Court, in a discussion of the lesser offenses included in the offense of murder based on statutory maximum punishments, opined that vehicular homicide must fall on the continuum of homicide somewhere between manslaughter, with a reckless culpable mental state, and criminal negligent homicide.
The main opinion, citing Long, concludes that the legislature must have intended that the word "unlawfully" describe the culpable mental state necessary to violate § 32-5A-192. The main opinion then states that "the culpable mental state of `unlawfully' must fall on the continuum of culpability somewhere between `knowingly' *582 and `criminal negligence.'" I disagree. It is my contention that the word "unlawfully" describes a person's conduct, not a person's state of mind.[1]
I realize that this court has in the past supplied a culpable mental state to other poorly drafted statutes. For instance, in State v. Self, 492 So.2d 319 (Ala.Crim.App. 1986), this court supplied a criminal culpability to the offenses of changing, removing, or obliterating of identification marks or numbers on firearms and the possession of a firearm whose identification marks had been changed, by analogizing that statute to a similar statute that clearly set out a culpable mental state regarding identical conduct with automobile VIN numbers. In Self, the criminal culpability intended by the legislature was clear.
However, it is not clear what mental state the legislature intended when it enacted § 32-5A-192. One could easily argue that the legislature intended "criminal negligence" to be the correct standard, while others would maintain "recklessness" is the correct standard. What is apparent to me is that one's unlawful conduct must amount to something more than simple speeding, failure to dim lights, or crossing a double yellow line before a citizen can be branded a killer. What drivers among us have not been guilty of some minor traffic violation that, only by the grace of God, did not result in a serious, and possibly fatal, accident?
Given the constitutional guarantee of due process, "what level or degree of culpable conduct is necessary before a person can be imprisoned pursuant to [the vehicular homicide] statute?" Ex parte Knowles, 689 So.2d 832 (Ala.1997)(Cook, J., concurring specially); also, Ex parte Beck, 690 So.2d 346 (Ala.1997)(Cook, J., concurring specially). The Code seems to point in a definite direction. In pertinent part, § 13A-2-4(b), Ala.Code 1975, provides:
"Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
"Culpable mental state" is defined in § 13A-2-1(6) as follows:
"Such term means `intentionally' or `knowingly' or `recklessly' or with `criminal negligence,' as those terms are defined in Section 13A-2-2."
It is this statutory direction and the constitutional requirement of due process that led the author of the main opinion to infer a criminal state of mind from the word "unlawfully," ascribing a mental state more culpable than that required for criminal negligence to the term "without legal excuse or justification." The main opinion is correct in determining that our vehicular homicide statute should require a culpable mental state, for without such a requirement the vehicular homicide statute imposes a severe criminal liability upon the happening *583 of a certain set of circumstances, namely, a death caused by a person who commits a traffic violation. See Commonwealth v. Heck, 341 Pa.Super. 183, 491 A.2d 212 (1985). As applied by the trial court in this case, the requirement that an underlying traffic violation be the cause of death did not add any element of a criminal state of mind to the offense. That is what allowed this jury to turn a young 16-year-old high school student into a felonious killer. And that is why the vehicular homicide statute, as it is currently written, violates the basic due process of law guaranteed to every citizen by the United States Constitution and the Alabama Constitution of 1901.
My rationale for this conclusion is in harmony with the conclusion reached by the Superior Court of Pennsylvania in 1985 in the case of Commonwealth v. Heck, supra:
"Included in the concept of due process is a degree of protection against the imposition of criminal liability without criminal intent on the part of the actor. The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.
". . . .
"No doubt the [voluntary homicide] statute seeks to heighten the duty of care owed by drivers, and thereby to promote the public welfare by curbing the tide of senseless carnage on our highways. This important goal of the law is comparable to the public welfare interest in regulating the liquor trade.... However, all other relevant factors demonstrate overwhelmingly that the law is penal in nature. The penalties under the statute are not light but severe; a conviction `gravely besmirches' the reputation of the offender; and the very label `vehicular homicide' identifies the crime as one taken over from the common law hierarchy of crimes involving moral condemnation.
". . . .
"... [N]egligent behavior implies inadvertence and must therefore be sharply distinguished from voluntary harmdoing, i.e.[,] from conduct that includes at least an awareness of possible harm.... The vast difference between voluntary harm-doing and negligent damage was expressed in Mr. Justice Holmes's graphic terms that even a dog understands the difference between being kicked and being stumbled over.
". . . .
"... Intentional, knowing, and reckless actions all involve the actor's consciousness of `endangering something socially valued;' the precise culpability level that applies depends on whether the actor intends a risk as the consequence of his actions, or knows the risk will be created by his actions, or is aware of the likelihood of the risk but chooses to disregard it.
"In a fundamental sense the harshness of criminal punishment is fitting only for these types of consciously inflicted wrongs, and so traditionally the criminal law has concerned itself exclusively with conscious wrongdoing. Where harm is perpetrated inadvertently without awareness or choice, recovery for negligence may be had under the civil law, consistent with its aim to fairly shift the economic costs of injuries onto those responsible for them. Of course, when someone is killed through inadvertence of negligence, monetary recovery can never make up for the loss. But *584 even though there may be an unreasoning desire for retribution on the part of the victim's heirs, it can serve no rational purpose of the criminal law to subject the merely negligent actor to the additional punitive sanctions of the criminal law. [S]uch sanction serves none of the principal, preferred purposes of criminal prosecutionsdeterrence, rehabilitation, and isolation of dangerous people from society.... One who is not aware of the criminality of his conduct cannot be deterred from performing it....
"... [T]he legislative decision to criminalize negligent driving if it happens to result in death does not make a true criminal of a merely negligent driver. Obviously such a driver never intends to take a life, and to make his negligence criminal based purely on this fortuitous outcome can have little deterrent effect on the incidence of negligent driving. A driver engaged in the negligent but unknowing commission of a traffic offense does not reflect at all on the possibility of killing someone; and it is almost absurd to suggest that he would drive more carefully if he knew it was a serious criminal offense to kill someone while driving negligently. A commentator has remarked thusly on `the fallacy of convicting the unfortunate driver':
"`Our finest citizens drive on the highways and are, at times, guilty of traffic infractions. When such an infraction results in the death of another, a jail sentence is not needed for them to realize their wrong. They did not mean to kill the first time, and the resulting mental torture from feeling they took another's life will more than insure that their driving habits will be corrected in the future.'
"Comment, The Fallacy and Fortuity of Motor Vehicle Homicide, 41 Neb. L.Rev. 793, 812-13 (1962)."
Commonwealth v. Heck, 341 Pa.Super. at 197-207, 491 A.2d at 219-226 (1985) (citations omitted).
Like the driver in Heck, and the Alabama drivers in Knowles and Beck, the evidence in this case proved no criminal culpability beyond simple negligence. Burnett was negligent in driving his automobile 8 miles over the speed limit on a foggy, cold night and, once he allowed his automobile to leave the roadway and then lost control of the car, he was certainly guilty, in a strict liability sense, of allowing his vehicle to stray into the wrong lane of traffic. Even though the indictment also listed reckless driving as one of the traffic infractions which caused the accident, the State presented no evidence of reckless driving.[2] Thus, while the appellant's conduct did not approach criminality under any of the traditional mens rea requirements, Alabama's vehicular homicide statute allowed him to be branded a criminal killer and to be sentenced to three years' imprisonment.[3]
*585 Alabama is one of only three states that allow a merely negligent driver to be jailed for more than two years for his negligence. Commonwealth v. Heck, supra, at 228. I believe such a result is too unfair to be countenanced by rule of law, and I would strike down Burnett's conviction as a violation of his constitutional right to due process of law.
FRY, J., concurs.
FRY, Judge, dissenting.
I concur completely with Judge Cobb's dissent; however, I feel compelled to make some additional observations. By dissenting, I in no way wish to be seen as minimizing the trauma suffered by the families of the victims in this case. I recognize that the hurt caused by a traffic fatality is due our eminent respect, but so is the Constitution of this State.
Initially, I note that any defendant in this State is constitutionally guaranteed that the State will inform him or her of the crime with which he or she is charged including the elements of that crime and the necessary scienter or degree of criminal intent required to commit that crime. See Lanier v. State, 733 So.2d 931, 936 (Ala.Cr.App.1998)(stating that "[a]n indictment must include all the essential elements that constitute the offense, and it must not leave any element open to inference"). Additionally, each element must be so clearly articulated by the trial court to the jury in a jury trial that the jury at least is presented with the opportunity to understand the applicable law and to apply that law to the facts the jury finds. If the issue of criminal intent or lack thereof is vague or ambiguous, neither the trial court nor the jury can perform its function and administer justice.
The main opinion, with its conclusion that "`unlawfully,' as it is used in § 32-5A-192, *586 Ala.Code 1975, means `without legal excuse or justification,'" pulls and stretches bits and pieces of various legal definitions to attempt to arrive at a constitutionally definable state of mental culpability. However, the weaving is too thin, and like so many gossamer threads holding together an ethereal garment, the result is more apparent than real.
In trying to buttress the notion of "unlawfully" as a recognized state of mental culpability, the main opinion cites the Commentary to § 13A-2-2, Ala.Code 1975, as authority for its conclusion. However, my reading of that paragraph sends me in the opposite direction. To me, the clear meaning of that paragraph is that the listed terms, which include "unlawful," are not beacons of light to guide and define various mental states but are rather terms providing quagmires of confusion, imprecision, and ambiguity. In short, there is no authority for defining "unlawfully" to include a state of mental culpability. "Unlawfully" simply defines an act or omission of conductnothing more.
Finally, I agree with Judge Cobb that § 32-5A-192, Ala.Code 1975, as written, makes what would otherwise be a traffic violation, i.e., a misdemeanor citation issued by a law enforcement officer, a felony due only to the fact that a death was proximately caused by the violation. The Alabama Supreme Court in Ex parte Long, 600 So.2d 982 (Ala.1992), stated that vehicular homicide must reside in the continuum of the lesser included offenses of murder somewhere between criminally negligent homicide and manslaughter. Accordingly, the state of mental culpability for vehicular homicide is somewhere between aggravated or gross negligence the required mental state for criminally negligent homicideand recklessness the required mental state for manslaughter. The main opinion requires nothing close to this level of mental culpability in its definition of "unlawfully." Essentially, that opinion permits a felony conviction for a violation causing death that could be without either negligence or recklessness.
In conclusion, because I do not believe that the main opinion provides a clear and precise concept of the degree of mental culpability required under § 32-5A-192, Ala.Code 1975, I must dissent.
NOTES
[1] It is interesting to note that the term "unlawful" is defined in § 13A-12-20, Ala.Code 1975, as "[n]ot specifically authorized by law," and is subsequently used as an adjective to describe gambling activities, not the state of mind of the gambler. An "unlawful gambling activity" would be gambling which has not been authorized by law. Yet, to be guilty of the crime of gambling, § 13A-12-21 requires a person to knowingly profit from "unlawful gambling activities." I also note that § 13A-12-20 was enacted some three years after § 13A-2-4(b), which required strict liability to be clearly stated in any statute, if that was the intent of the legislature.
[2] The trial court gave the following instruction to the jury concerning the definition of reckless driving: "Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection, and at a speed or in a manner so as to endanger, or be likely to endanger, any person or property shall be guilty of reckless driving." (R. 133-34.)
[3] The injustice of letting serious criminal liability turn on the fortuity of a death on the highway is sadly illustrated by this case. The record indicates that two of the victims of this accident died after being ejected from their vehicle. Had this young mother and her children been properly restrained by seatbelts and child safety restraints their chances of surviving the impact would have greatly increased. And had they survived the impact, Burnett would have faced no more than a civil action.

The following hypothetical examples set out by the court in Heck also illustrate the problem of basing serious criminal liability solely on a death caused by a traffic infraction:
"Ex. 1: Suppose D's speedometer is off by 5 MPH. For the past hour he has been travelling along the freeway at 60 MPH, although his speedometer registers only 55 MPH. He should know (a jury decides) that his speedometer is slow, and thus should know that he is violating the law by speeding. D kills A, who is stopped by the roadside changing a tire and steps onto the highway while D is passing. D's violation of the maximum speed law caused A's death, for if D hadn't been speeding, A would have finished with his chore and gone before D arrived at that spot on the road. D is liable for vehicular homicide.
"Ex. 2: (Stated in the alternative). Suppose D inadvertently fails to dim his headlights, blinding A and causing him to run his car off the road and kill himself; or suppose D forgetfully neglects to turn on his lights before starting on a trip one night, with the result that A, while attempting to turn his vehicle onto the highway, is broad-sided and killed. Either way, D is guilty of vehicular homicide, and under the statutory scheme becomes a `criminal killer.'
"Ex. 3: In this example, we hypothecate that D is a reputable and law-abiding citizen driving to work one morning. He attempts to turn at an intersection with limited visibility, and fails to see a motorcycle approaching from the opposite direction at 55 MPH, 15 MPH over the speed limit. He is not aware of the motorcycle until it is too late, nor can his momentary inattention be characterized as a `gross deviation' from reasonable care in the circumstances. D may be found guilty of vehicular homicide.
"The possible contributory negligence of the victims in these cases will not prevent the defendants from being held criminally liable. This holds true even if the victim's negligence contributing to the accident is greater than the defendant's, so as to bar the victim's estate from winning damages in a civil suit. The rule is that the contributory negligence of the victim is not a defense to a criminal charge of homicide by vehicle if the defendant's actions were a substantial factor in causing the death."
Commonwealth v. Heck, 341 Pa.Super. at 212-13, 491 A.2d at 226-27.